*State of Maryland v. Scott Corey Coale*, No. 2001, September Term 2018
Opinion by Kehoe, J.

**CRIMINAL PROCEDURE — INTERSTATE AGREEMENT ON DETAINERS**

The Interstate Agreement on Detainers ("IAD") is an agreement among the states to facilitate the prompt disposition of a detainer filed by one state against a person incarcerated in another. Because the IAD has been approved by Congress, it is subject to interpretation by federal courts and Maryland courts defer to interpretations of the IAD provided by the United States Supreme Court.

Article III of the IAD, codified as Md. Code Corr. Servs. § 8-405, provides that a prisoner can request disposition of all charges for which detainers have been issued within 180 days. The 180-day period begins to run on the date that notice of the prisoner's invocation of his right has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him. *Fex v. Michigan*, 507 U.S. 43 (1993).

When the General Assembly approved the IAD in 1965, it enacted supplemental statutes to assist in the implementation and administration of the compact in Maryland. Those statutes are now codified as Corr. Servs. §§ 8-412–17. Corr. Servs. § 8-412 requires Maryland courts and State and local officials to "cooperate with one another and other party states in enforcing the Agreement and effectuating its purposes."

For the purposes of the IAD, the appropriate court to receive notice is the court in which the charges are pending at the time that the prisoner invokes his right to disposition of all charges. The warden or other appropriate official of the custodial state is required to provide the notice.

If the warden of the custodial state fails to notify the appropriate court of a prisoner's invocation of his right to disposition of pending charges but does send notice to the appropriate prosecutor, Corr. Servs. § 8-412 requires the prosecutor to take steps to notify the appropriate court. The 180-day time limit begins to run when the prosecutor has actual notice of the prisoner's invocation of his right to disposition of pending charges.

Circuit Court for Anne Arundel County
Case Nos.   02-K-08-002294
            02-K-08-002295
            02-K-08-002296
            02-K-08-002297
            02-K-08-002435

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2001

September Term, 2018

_____

STATE OF MARYLAND

v.

SCOTT COREY COALE

_____

Fader, C.J.,
Kehoe,
Beachley,

JJ.

_____

Opinion by Kehoe, J.

_____

Filed:  March 31, 2021

* Ripken, J., did not participate in the Court's decision to report this opinion pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

**Contents**

Introduction

Background

    The Interstate Agreement on Detainers

    Coale's 2009 convictions

        Coale invokes the IAD

        Proceedings in Howard County

        Proceedings in Anne Arundel County

    The post-conviction court proceeding

        The petition and the hearing

        The post-conviction court's judgment

Timeline

The parties' appellate contentions

The standard of review

Analysis

    A. The parties' statutory arguments

    B. The post-conviction court's analysis revisited

    C. Our independent review

Appendix

**Introduction**

In 2007, Scott Corey Coale committed a series of crimes in Howard and Anne Arundel counties. He then went to California, where he was convicted of an unrelated crime and sentenced to prison. While Coale was serving his California sentence, officials in Howard County and Anne Arundel County separately filed detainers against him for the charges pending in their respective jurisdictions. Coale invoked his right under the Interstate

Agreement on Detainers (the "IAD") for prompt disposition of those charges. He was extradited to Maryland and, in 2009, resolved the Anne Arundel County charges by means of a plea agreement.

In 2016, Coale filed a petition for post-conviction relief as to the Anne Arundel County convictions, asserting that his trial counsel had provided ineffective assistance by failing to investigate and pursue a motion for dismissal under the IAD. The post-conviction court granted the petition, vacated the convictions and sentences entered against him, and dismissed all of the underlying charges with prejudice. The State filed an application for leave to file an appeal pursuant to Md. Rule 8-204, which this Court granted. *State of Maryland v. Scott Coale*, ALA No. 0678, 2018 Term.

The State presents one issue on appeal, which we have reworded slightly:

> Did the post-conviction court err when it granted Coale's petition for post-conviction relief based upon his trial counsel's alleged failure to investigate and pursue a motion to dismiss the cases pending against him on the grounds that the State had violated the Interstate Agreement on Detainers?[1]

We will reverse the court's judgment. To prevail in his post-conviction action, Coale must demonstrate that his trial counsel's representation was deficient and that he was prejudiced by his counsel's shortcomings. *State v. Syed*, 463 Md. 60, 75, *cert. denied* ___ U.S. ___, 140 S. Ct. 562 (2019). A defendant satisfies the second requirement when he

---

[1] The State articulates the issue as:

> Did the post-conviction court erroneously conclude that Coale's trial counsel provided ineffective assistance by not investigating and pursuing a motion to dismiss under the IAD?

shows that "but for counsel's unprofessional errors, the result of the proceeding would have been different; or that the result of the proceeding was fundamentally unfair or unreliable." *Id.* (quoting *Newton v. State*, 455 Md. 341, 355 (2017)). For the purposes of our analysis, we will assume that Coale has satisfied the first criterion. However, any suppositional deficiency in trial counsel's performance neither affected the outcome of the 2009 proceedings nor rendered his convictions unfair or unreliable.

## Background

### *The Interstate Agreement on Detainers*

A detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *White v. State*, 223 Md. App. 353, 372 n.14 (2015) (quoting *State v. Jefferson*, 319 Md. 674, 678 n.2 (1990)). The Interstate Agreement on Detainers, codified in Maryland as §§ 8-402–11 of the Correctional Services Article, "is a congressionally-sanctioned compact among the states designed to facilitate the prompt disposition of a detainer lodged by one state against a person incarcerated in another state." *Aleman v. State*, 469 Md. 397, 402, *cert. denied*, ___ U.S. ___, 141 S.Ct. 671 (2020). Because it is an interstate compact that has been approved by Congress, the IAD is subject to construction by federal courts. *Alabama v. Bozeman*, 533 U.S. 146, 149 (2001); *New York v. Hill*, 528 U.S. 110, 111 (2000). Maryland courts "ordinarily defer to interpretations of the [IAD] provided by the United States Supreme Court." *Pitts v. State*, 205 Md. App. 477, 487–88 (2012) (citing *State v. Pair*, 416 Md. 157, 168 (2010)).

Pending detainers can restrict an inmate's eligibility for training and educational programs, transfers to moderate or minimum-security facilities, and similar measures intended to assist in the rehabilitation of the inmate. *See, e.g., Carchman v. Nash*, 473 U.S. 716, 730 n.8 (1985); *Pair*, 416 Md. at 160–61.[2] The legislative purpose of the IAD is to establish uniform procedures for the prompt disposition of such charges. *Pair*, 416 Md. at 162. To this end, the IAD sets out rules and procedures "for the temporary transfer of the prisoner from the state of incarceration to the state in which charges are pending, upon the request of either the prisoner or the prosecuting jurisdiction." *Aleman,* 469 Md. at 402. Among those procedures, Article III of the IAD, codified as Corr. Servs. § 8-405, "gives a prisoner incarcerated in one State the right to demand the speedy disposition of any untried

---

[2] In *Carchman*, the Court summarized some of the negative effects of pending detainers:

> The inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons . . . (4) ineligible for trustee [sic] status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions . . . (8) not entitled to preferred prison jobs; (9) inhibited by the denial of possibility of parole or any commutation of his sentence; [and] (10) caused anxiety and thus hindered in the overall rehabilitation process since he cannot take maximum advantage of his institutional opportunities."

473 U.S. at 730 n.8.

indictment, information or complaint that is the basis of a detainer lodged against him by another State[.]" *Pair*, 416 Md. at 412 (quoting *Carchman*, 473 U.S. at 718–19).

For the purposes of the IAD, member jurisdictions can play two roles: The "receiving state" is one in which a criminal trial is to be held as a result of a detainer filed by prosecutors in that jurisdiction; the "sending state" is the jurisdiction in which the person facing the pending charges is currently incarcerated. *See* IAD Article II, codified as Corr. Servs. § 8-404(b) and (c). In the present appeal, California and Maryland are respectively the sending and receiving states.

The IAD addresses two scenarios. The one that is relevant to this appeal is when a prisoner in a sending state requests a resolution of the charges which are the basis for the detainers filed by the receiving state. This subject is addressed in Article III of the IAD, codified as Corr. Servs. § 8-405.[3] In *Pair,* the Court summarized the initial stages of the process contemplated by Article III:

> The interstate transfer process begins when the "receiving" state lodges a detainer with the warden "or other official" of the institution where the prisoner in question is currently imprisoned, in what is referred to as the custodial or "sending" state. The warden . . . in the sending state is then obligated to inform the inmate of the detainer's source and contents, and of the inmate's right, under the IAD, to request final disposition of the charges on which the detainer is based.

---

[3] The other scenario arises when the receiving jurisdiction initiates the process by asking the sending jurisdiction for temporary custody so that the inmate can be tried on charges pending in the receiving jurisdiction. This is addressed in Article IV of the IAD, codified as Corr. Servs. § 8-406.

> To exercise the right of speedy disposition, the inmate must file a request for IAD relief with the warden, who must forward the request to appropriate authorities in the receiving state. This document operates as a request by the prisoner for final disposition of all untried charges underlying the detainer and is deemed to be a waiver of extradition.

*Id.* at 162–63 (some quotation marks, brackets, footnotes and citations omitted).

Article III(b) of the IAD provides that a sending state's notice of an inmate's invocation of his Article III rights must be sent to the "appropriate prosecuting official and court" by certified or registered mail, return receipt requested. Once a prisoner invokes his rights for a disposition of the pending charges, he

> shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court[4] of the prosecuting officer's jurisdiction written notice of the place of the prisoner's imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint[.]

IAD Article III(a), codified as Corr. Servs. § 8-405(a). The 180-day limit can be extended "for good cause shown in open court, the prisoner or the prisoner's counsel being present[.]" *Id.*

Two other provisions of the IAD figure in the arguments raised by the parties: First, a prisoner's request for disposition under Article III "operates as a request for final disposition" of all pending charges for which detainers have been issued from the receiving state. *See* IAD Article III(d), codified as Corr. Servs. § 8-405(d). Second, Article IX of the

---

[4] Corr. Servs. § 8-401(c) states:

> "Appropriate court" means, with reference to the courts of this State, a circuit court of a county or the District Court.

IAD, codified as Corr. Servs. § 8-411, states that its provisions are to be "liberally construed so as to effectuate its purposes."

The Council of State Governments has promulgated standard forms for the implementation of the IAD. *Laster v. State*, 313 Md. 548, 551 n.2 (1988). The then-current versions of the forms are set out in an appendix to the Court's opinion, *id*. at 562–69, and the Court looked to language in the forms as a guide to interpretation of the IAD. *Id.* at 554–58.[5]

When it adopted the IAD in 1965, the General Assembly also enacted supplemental statutes (now codified as Corr. Servs. §§ 8-412–17) to assist in the implementation and administration of the compact's provisions. *See* chapter 627 of the Laws of 1965; *Laster v. State*, 313 Md. at 571 n.2 (McAuliffe, J., concurring) (noting that the prior version of what is now Corr. Servs § 8-416 was added by Maryland at the time of its adoption of the IAD.).

Two of these supplemental statutes are relevant to the present case. The first is Corr. Servs. § 8-412, which requires Maryland's courts and government agencies to enforce the IAD and to "cooperate with one another and other party states in enforcing the Agreement

---

[5] The current version of the forms, now provided by the National Association of Extradition Officials, may be found in Appendix D to Nolan H. Rogers and Edward O. Siclari, *Maryland Extradition Manual*, accessible at https://sos.maryland.gov/Documents/MD-ExtraditionManual.pdf. At least as to the forms that are relevant to this appeal, the current versions of the forms are substantively identical to those discussed in *Laster*.

and effectuating its purpose."[6] The second is Corr. Servs. § 8-416, which states that written notices to the prosecutor and the trial court required by Articles III and IV "may not be deemed to have been delivered . . . until the notice or notification is actually received by the appropriate court" and State's Attorney's office.[7]

There is a final piece to the statutory mosaic. On the same day that the General Assembly enacted the legislation approving the IAD, the Legislature also passed the Intrastate Detainer Act, now codified as Corr. Servs. §§ 8-501–03. *State v. Barnes*, 273 Md. 195, 207 (1974). Because the IAD and the Intrastate Detainer Act "are component parts of the same general system[,] they should be construed together to the extent possible." *Id.* Decisions by the Court of Appeals in Intrastate Detainer Act cases will assist us in resolving some of the parties' contentions in the present case.

We will now turn to the events giving rise to this appeal.

---

[6] Corr. Servs. § 8-412 states in full:

> All courts, departments, agencies, officers, and employees of the State and its political subdivisions shall enforce the Agreement and cooperate with one another and other party states in enforcing the Agreement and effectuating its purpose.

[7] Corr. Servs. § 8-416 states:

> As to any request by an individual confined in another party state for trial in this State, written notice may not be deemed to have been delivered to the prosecuting officer and the appropriate court of this State in accordance with § 8-405(a)(Article III(a) of the [IAD]) . . . until the notice or notification is actually received by the appropriate court and the appropriate State's Attorney . . . or any other person empowered to receive mail on behalf of the State's Attorney.

## The 2009 Convictions

### *Coale invokes the IAD*

As we have related, while Coale was serving a prison sentence in California, prosecutors in Howard and Anne Arundel counties filed detainers against him for the charges pending in their respective counties. In May 2008, California prison officials notified Coale of the detainers. About two weeks later, and in addition to other documents, Coale signed two versions of IAD Form II, which contained the formal invocation of his right to stand trial on those charges within 180 days. *See Laster*, 313 Md. at 554. One version of the forms pertained to the Howard County charges and the other to the charges pending in Anne Arundel County. Coale delivered these documents to the warden of the California prison in which he was incarcerated. At this juncture, Article III required the warden to send copies of the forms together with some additional paperwork[8] "to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." *Laster*, 313 Md. at 554 (citing Article III(b) of the IAD). In Coale's case, however, the finely calibrated process contemplated by Article III broke down in two ways.

First, even though Coale had signed two versions of Forms I and II, one for the charges pending in Anne Arundel County, and the other for the Howard County charges, and Article III unambiguously required the California prison warden to mail copies of the forms

---

[8] Specifically, the notification of the detainers (IAD Form I), a certificate of Coale's status as an inmate (Form III) and an offer to deliver temporary custody of Coale to Maryland for purposes of trial (Form IV).

and related paperwork to the prosecutor and courts in each county,[9] the warden sent both sets of Coale's paperwork only to the Howard County State's Attorney's Office. The State's Attorney's Office received copies of Coale's paperwork by facsimile transmission on June 10, 2008, and the original documents by mail on June 16, 2008. The California warden sent nothing to the Anne Arundel County State's Attorney. It was not until July 10, 2008, that Navene Wright, the IAD coordinator for the Howard County State's Attorney's Office, telephoned her opposite number in Anne Arundel County regarding Coale's cases.[10] She learned that the Anne Arundel State's Attorney's Office knew nothing about Coale's invocation of his IAD rights. On July 15, 2008, Wright faxed Coale's IAD paperwork to the Anne Arundel prosecutors.

Second, Article III required the California warden to notify "the appropriate . . . court" in which the charges pending against Coale were to be prosecuted in both Anne Arundel and Howard counties. The warden didn't notify any court in either county. Although there is no explanation in the record as to why these notices were not properly delivered, the

---

[9] Article III(b) states (emphasis added):

> The written notice and request for final disposition required under subsection (a) of this section shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of the prisoner, who shall promptly forward it together with the certificate to *the appropriate prosecuting official and court* by registered or certified mail, return receipt requested.

Md. Code Ann., Corr. Servs. § 8-405.

[10] Wright did not testify at the post-conviction hearing, but her contemporaneous notes were admitted into evidence.

forms signed by Coale to initiate the IAD process did not identify a court or judicial official to receive notice. In the space on the Anne Arundel form, in which this information should have been entered, is written: "District Attorney, County of Anne Arundel, State of Maryland." A similar error appears on the corresponding form for the Howard County charges.[11] Other than the delivery of notice problems that we have just described, Coale's attempt to invoke his Article III rights complied with all of the other relevant requirements of the IAD and neither party suggests otherwise.

*The Howard County proceedings*

On June 26, 2008, the State's Attorney for Howard County filed IAD Form VII, indicating his acceptance of California's offer to transfer custody of Coale to Howard County for purposes of bringing him to trial within the time specified in Article III.[12] On July 8, 2008, the Form VII was signed by a judge of the District Court of Maryland for Howard County, certifying, among other things, that the State's Attorney for Howard

---

[11] We are attaching an image of the Form II relating to the Anne Arundel County charges in the appendix.

During the post-conviction hearing, Coale testified that he had "filled out" the Form IIs after they were presented to him. But he also stated that, when he signed the forms, he "was in segregation so I didn't have access to anything." It is unclear what parts of the forms he was referring to.

[12] *See Laster*, 313 Md. at 554 ("Upon receipt of Forms 2, 3 and 4, the prosecutor completes Form 7[,] . . . in which the prosecutor certifies that the prisoner will be brought to trial within the time specified in Article III, and sends it to the warden.").

County was the appropriate official to accept temporary custody of Coale. The form was mailed to the California prison warden on July 10, 2008.[13]

After officials in the Howard County State's Attorney's Office and the California prison agreed upon a date, Coale was transferred to Howard County and his pending cases there were resolved by guilty pleas entered on December 1, 2008.

*The Anne Arundel County proceedings*

Our focus now shifts to Anne Arundel County. As we have stated, the Anne Arundel State's Attorney's Office first learned of Coale's IAD request on July 10, 2008, and received the relevant documents from Wright on July 15th. But it was not until October 17, 2008, that the Anne Arundel County State's Attorney's office filed indictments against Coale in the circuit court. There were five cases, each arising out of a separate criminal incident; one case was initially scheduled for trial on January 6, 2009, three for trial on February 5, 2009, and the fifth on February 26, 2009. From what we can tell from the record, no one from the Anne Arundel prosecutor's office made any effort to inform the circuit court that the cases against Coale were subject to Article III's 180-day limit for disposition until a status conference on all the cases which occurred on December 12, 2008. On that same day, Coale's trial counsel met with his client and learned for the first time that there was a potential problem with compliance with Article III's 180-day limit.

---

[13] An image of the Form VII filed in the District Court for Howard County is included in the appendix attached to this opinion.

In the status conference, the prosecutor took the position that his office had received Coale's request for final disposition on July 15, 2008, which the prosecutor took to mean that the pending cases against Coale had to be tried by January 11, 2009 in order to comply with the IAD. The court was skeptical as to this proposition because there was nothing in the circuit court files regarding Coale's request for final disposition within 180 days. Defense counsel asserted that notice to the State's Attorney's Office was imputed to the circuit court.

The prosecutor indicated that he was prepared to try the cases within what he believed was the 180-day limit, but defense counsel opposed the idea as "inappropriate at this point." Defense counsel asserted that there were discovery issues in two of the cases, that the State's proposed trial dates did not work with his schedule and that the State's proposed trial dates would be outside the 180-day limit. Asked by the court if Coale had any documentation related to his IAD request, defense counsel answered that he did not because California had not released any of Coale's paperwork or personal property when he was transferred to Howard County. Eventually, the parties were directed to the Honorable William C. Mulford, who was the designee of the administrative judge for rescheduling criminal cases. *See* Md. Rule 4-271(a). That hearing took place later on the same day.

Before Judge Mulford, the prosecutor asked the court to grant continuances in the pending cases. The prosecutor explained to the court that there was "an argument to be made" that the written notice received by the Howard County State's Attorney's Office on

June 16, 2008, could be imputed both to the Anne Arundel County State's Attorney's Office and to the circuit court. (If this were correct, the 180-day limit for prosecution would have expired on December 15th.) The prosecutor stated that Coale had "multiple cases, in Howard County, multiple cases in Anne Arundel County," and that "the sheer volume of cases . . . really precludes the State . . . from trying them within the 180 days under the [IAD]." The prosecutor also pointed out that the prospects for bringing any of the cases to trial in early January were complicated by the fact that the Anne Arundel County Circuit Court did not schedule jury trials for a two-week period ending on January 5th. He informed the court that there were no pending discovery issues but that there "might be suppression issues."

Defense counsel opposed granting the continuance. He asserted that there were, in fact, outstanding discovery problems and that the State could not possibly show good cause for a continuance. This was so, he said, because the Anne Arundel prosecutors had waited until October 31 to indict Coale even though they had been made aware of his invocation of his Article III rights three-and-a-half months earlier. All of the problems now confronting the State were, according to counsel, readily foreseeable and were no different from those facing the Howard County prosecutors. The difference, he asserted, was that the Howard County prosecutors "got the ball rolling faster" than did their Anne Arundel counterparts.

The court expressed skepticism as to the parties' assertions that the notice to Howard County courts or prosecutors might constitute notice to the Circuit Court for Anne Arundel County, and observed that the State was "proceed[ing] at [its] peril . . . if it turns out that

actual notice was given[.]" Nonetheless, the court decided the State had shown good cause for a continuance and granted the State's motion. In reaching this conclusion, the court specifically mentioned the lack of documentation that could affirm or rebut the parties' assertions as to when the Circuit Court for Anne Arundel County had notice.

Coale's cases were rescheduled for January 6, 2009. Because of a death in defense counsel's family, the cases were rescheduled to January 27, 2009. Under the terms of a plea agreement, Coale pled not guilty on an agreed statement of facts to charges of first-degree burglary in one case, theft over $500 in another, and kidnapping in a third. The agreed-upon sentence totaled 25 years to run concurrently with the sentences in California and Howard County. The remaining charges were to be nol prossed. The court accepted the plea, imposed the agreed-upon sentences and nol prossed the other charges. Coale filed an untimely notice of appeal which he later dismissed upon advice of his appellate counsel.

**The post-conviction relief proceeding**

*The post-conviction hearing*

In February 2016, Coale filed a petition for post-conviction relief alleging that his trial counsel provided ineffective assistance by failing to investigate and pursue a motion for dismissal under the IAD. Coale asserted that, had he undertaken such an investigation, his trial counsel would have realized the implications of the delay between the trial dates as originally scheduled and the date that the Circuit Court for Anne Arundel County received notice of his client's invocation of his Article III rights. He told the court—erroneously as it turned out—that it was "explicit in the transcripts" that it had been Coale's trial counsel

who requested a continuance past the 180-day limit.[14] Instead, argued post-conviction counsel, trial counsel should have "kept his mouth shut" on the issue until the 180-limit had expired which was, under his theory of the case, no later than January 6, 2009. Trial counsel should have then filed a motion to dismiss the charges with prejudice because "the clock has expired." At the hearing, Coale testified on his own behalf, called his trial attorney as a witness, and presented various documents related to his Article III request for final disposition. Most of the evidence presented at the hearing pertained to asserted deficiencies of his trial counsel's performance. For the purposes of our analysis, we will assume that Coale met his burden on this issue.

*The post-conviction court's judgement*

Although the post-conviction court's view of the evidence and the law was somewhat different than Coale's, it nonetheless granted his petition. The court's reasoning was set out in a memorandum opinion dated May 9, 2018, which we summarize:

Initially, the court stated that it was "undisputed" the District Court of Maryland for Howard County was placed on notice of Coale's invocation of his Article III rights on June

---

[14] Post-conviction counsel's claim that it had been Coale's lawyer who asked for the continuance was wrong but understandably so. The original version of the transcript of the hearing before Judge Mulford attributed the request to defense counsel. At the post-conviction hearing, Coale's 2008 counsel testified that "I don't recall doing that [and] I cannot for the life of me figure out why I would have asked [for a continuance]." Certainly, in the rest of the hearing, defense counsel opposed granting the motion.

On February 5, 2019, the State filed an unopposed motion to correct the transcript, which this Court granted. The corrected transcript shows that the request for a continuance had actually been made by the prosecutor and had been opposed by defense counsel.

13, 2008. (That was the date when Wright, the IAD coordinator for the Howard County State's Attorney's Office, filed requests for copies of statements of charges and other documents relating to the cases pending against Coale in that court.)

From this premise, the post-conviction court concluded that the notice to the District Court for Howard County constituted notice on the same date to the Anne Arundel County State's Attorney's Office, the Circuit Court for Anne Arundel County and the District Court for Anne Arundel County, indeed to all Maryland courts and prosecutors. In reaching this conclusion, the court relied on *State v. Pair*, 416 Md. 157, 178 (2010), for the proposition that the IAD places "one and only one burden on the prisoner, that is, to ask the prison official who has custody over him to prepare and send the forms to the jurisdiction from which the detainer 'is lodged against him.'" The court noted that in arguing otherwise, the State cited *Laster v. State*, 313 Md. 548 (1988), which the court characterized as "actually work[ing] in favor of" Coale.[15] The post-conviction court interpreted Corr. Servs. § 8-412[16] to mean that, once "the appropriate officials in Howard County, and thus, Maryland had actual notice . . . the responsibility shifted to Howard County to forward [Coale's] request for disposition to Anne Arundel County[.]"

---

[15] As we will explain, we do not agree with the post-conviction court's reading of *Laster*.

[16] Corr. Servs. § 8-412 states:

> All courts, departments, agencies, officers, and employees of the State and its political subdivisions shall enforce the Agreement and cooperate with one another and other party states in enforcing the Agreement and effectuating its purpose.

Applying the standard Maryland mechanism for calculating time,[17] the court next concluded that the 180-day limit set out in Article III expired on December 10, 2008. Because the prosecutor had requested a continuance on December 12, the request was untimely. Had trial counsel been prepared with documentation to show that the District Court for Howard County received notice of Coale's invocation of his IAD rights on June 13, 2008, the motions court would have had no choice but to dismiss the charges with prejudice.

Based upon the testimony of Coale and his trial counsel at the post-conviction hearing, the court found that Coale had flagged the 180-day issue for trial counsel and that counsel should have obtained copies of the relevant documents from either the circuit court or the

---

[17] Md. Code Gen. Prov. § 1-302 states in pertinent part:

> (a) In computing a period of time described in a statute, the day of the act, event, or default after which the designated period of time begins to run may not be included.
>
> (b) The last day of the period of time computed under subsection (a) of this section shall be included unless:
>
> (1) it is a Sunday or legal holiday, in which case the period runs until the end of the next day that is not a Sunday or legal holiday; or
>
> (2) the act to be done is the filing of a paper in court and the office of the clerk of the court is not open on the last day of the period of time, or is closed for a part of a day, in which case the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the office is not open the entire day during ordinary business hours.
>
> (c)(1) When the period of time exceeds 7 days, intermediate Sundays and legal holidays shall be counted in computing the period of time.
>
> * * *

public defender's office in Howard County before the status conference on December 12th. Trial counsel's failure to have the documents prevented him from arguing to Judge Mulford that the 180-day limit had already expired, much to Coale's prejudice.

Finally, the court concluded:

> As previously stated, when the State failed to resolve the Petitioner's untried Anne Arundel County cases within the 180-day limitations period of the IAD, the dismissal with prejudice of the Anne Arundel County charges was mandated. All that was necessary to secure this dismissal was for the Assistant Public Defender to present the documentation showing notification of Petitioner's invocation of the IAD. . . . Further, by failing to establish a sufficient factual record in the trial record, the Assistant Public Defender prevented a favorable decision on appeal.
>
> Accordingly . . . there is a reasonable probability that (1) there would have been no basis to excuse the State's violation of the Maryland IAD, thereby mandating entry of a judicial order dismissing with prejudice all of the underlying charges in Petitioner's Anne Arundel County cases, or (2) the issue would have been resolved in Petitioner's favor at the appellate court level.

For these reasons, the court granted Coale's petition, vacated his convictions and sentences, and dismissed all of the 2009 charges with prejudice.

On the following page, we have set out a timeline to give context to the parties' appellate contentions.

| Possible triggering event | Expiration of 180-day period *See* **Gen. Prov. § 1-132** |
|---|---|
| June 10, 2008: The California warden faxes Coale's IAD Form II and related paperwork to the Howard County State's Attorney's Office. | December 7, 2008 (Sunday) so December 8, 2008 |
| June 13, 2008: The Howard County State's Attorney's Office files its request for documents related to Coale's pending cases in the District Court for Howard County.*† | December 10, 2008 |
| June 16, 2008: The Howard County State's Attorney's Office receives paper copies of Coale's Form II and related documents from California. | December 13, 2008 (Saturday) so December 15, 2008 |
| June 26, 2008: The Howard County State's Attorney files IAD Form VII (acceptance of temporary custody for trial within time specified in Art. III(a)).** | December 22, 2008 |
| July 8, 2008: A judge of the District Court for Howard County certifies that the Howard County State's Attorney is the appropriate person to take custody of Coale for IAD purposes** | January 4, 2009 (Sunday) so January 5, 2009 |
| July 10, 2008: Howard County IAD coordinator Navene Wright contacts her opposite number in the Anne Arundel County State's Attorney's Office regarding Coale's case.** | January 6, 2009 |
| July 15, 2008: Wright faxes copies of Coale's paperwork to the Anne Arundel State's Attorney's Office. | January 11, 2009 (Sunday) so January 12, 2009 |
| None‡ | Never |

The circuit court granted the State's motion for continuances on December 12, 2008.

\* The date that Coale relies on in his brief.

\*\* Alternative starting dates posited by Coale's counsel at the post-conviction hearing.

† The starting date used by the post-conviction court.

‡ The State's position in its brief to this Court.

**The parties' appellate contentions**

The State presents several arguments as to why the post-conviction court erred in granting Coale's petition:

First, the State asserts that Coale's invocation of his Article III right to disposition of the charges pending against him within 180 days had to "actually be received by the appropriate court and the appropriate State's Attorney" to be effective. The appropriate courts to receive the notice were the circuit courts of the counties in which Coale's charges were pending. The State relies primarily on Corr. Servs. § 8-416 for this proposition. To the extent that *Laster* suggests otherwise, the State asserts that the Court's reasoning in *Laster* is inconsistent with the Supreme Court's holding in *Fex v. Michigan*.

Second, the State argues that the post-conviction court "clearly erred by finding it 'undisputed that . . . the District Court received actual notice . . . by June 13, 2008'"[18] for two reasons. The State correctly points out that the post-conviction court's characterization of its conclusion as "undisputed" is simply wrong—the transcript of the post-conviction hearing shows that the State did not concede that the District Court received notice on June 13, 2008. More fundamentally, the State argues that the post-conviction court misread the critical documents in the post-conviction in its analysis, namely, the requests filed on June 13, 2008 by the Howard County State's Attorney's Office for true test copies of documents

---

[18] This was the date on which Wright, the IAD coordinator for the Howard County State's Attorney's Office, filed her request for copies of Coale's pending charges in the District Court of Howard County.

filed in the pending cases against Coale in the District Court for Howard County. The State asserts that there is nothing in those documents that would alert anyone of the District Court that Coale's case involved the IAD, much less that Coale had invoked his rights under Article III.

Third, the State suggests that "there was nothing [Coale's] trial counsel could have done to prevent the good-cause finding, secure a dismissal in circuit court, or set the stage for a successful appeal." According to the State, this was because there was "absolutely nothing in the court files to indicate that the appropriate court and the appropriate State's Attorney of the State ha[d] received actual notice. Defense counsel could not have produced any document to show otherwise because none existed." As a fallback to this argument, the State asserts that there were ample grounds to support Judge Mulford's grant of the prosecutor's motion for a continuance on December 12, 2008.

Coale takes issue with each of these contentions. At a conceptual level, he suggests that the appropriate analysis should focus on Article I,[19] which states that "it is the policy of the party states and the purpose of this Agreement to encourage the expeditious and

---

[19] Article I of the IAD (codified as Corr. Servs. § 8-403) states in pertinent part:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this Agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments[.]

orderly disposition" of pending criminal charges, and Article XI of the IAD, which states that the IAD is to be "liberally construed so as to effectuate its purposes."

Turning to the specifics of the State's contentions, Coale argues that its reliance on Corr. Servs. § 8-416's requirement for actual notice is misplaced. He suggests that it has long been the policy of Maryland that "substantial compliance" with the requirements for notice is sufficient, citing *State v. Barnes*, 273 Md. 195, 210 (1974) (construing the Intrastate Detainer Act, now codified as title 8, subtitle 5 of the Correctional Services Article).

Coale disagrees with the State's contention that the IAD requires actual receipt of the IAD notices by the circuit court of the county in which the charges are pending. He points to another Intrastate Detainer Act case, *Brooks v. State*, 329 Md. 98, 103–04 (1993). In that case, and among other holdings, the Court concluded that the "appropriate court" for purposes of notice was not limited to the court with actual jurisdiction over the pending charges but to any court that exercised "some form of 'criminal jurisdiction'" in the political subdivision in which the charges were pending. Coale points to the fact that the Howard County State's Attorney's Office is located in the same building at the District Court for Howard County as further support for the notion that knowledge on the part of

the Howard County States Attorney's Office should be imputed to the District Court, the Anne Arundel State's Attorney's Office, and the Circuit Court for Anne Arundel County.[20]

Coale also argues that the State failed to demonstrate good cause for its motion for a continuance in the hearing before Judge Mulford because, according to Coale, the sole basis of the court's decision was the fact that it was unclear as to when the Anne Arundel

---

[20] Coale also suggests that Wright, the IAD coordinator for the Howard County State's Attorney's Office, should be treated as an official of the District Court. To support this contention, he asserts:

> On August 13, 2008, the Attorney General's Office sent a letter regarding Mr. Coale's interstate transfer to the State's IAD clerk in Howard County and addressed her in the letter as the "Extradition-Detainer Coordinator" at the Howard County District Court.

The record discloses that actual addressee of the letter was:
> Navene Wright
> Extradition-Detainer Coordinator
> Office of the State's Attorney for Howard County
> District Court/Multiservice Center
> 3451 Courthouse Drive
> Ellicott City, MD 21043.

As the State points out in its reply brief:

> [T]enants in the same building do not routinely receive, let alone open or read, each other's mail or faxes. This is especially true when the tenants are a court and a prosecutor's office, two entities that frequently receive highly sensitive documents. So there is no reason to believe that District Court officials in the same building as the State's Attorney's Office saw or read the IAD forms faxed and then mailed to that office.

We agree with the State and will not further address this argument.

State's Attorney's Office had received notice of Coale's assertion of his Article III rights.[21]

## The standard of review

An appellate court's "review of a post-conviction court's findings regarding ineffective assistance of counsel is a mixed question of law and fact." *State v. Syed*, 463 Md. 60, 73, *cert. denied*, ___ U.S. ___ 140 S. Ct. 562 (2019); *Newton v. State*, 455 Md. 341, 351 (2017). We review the post-conviction court's findings of fact for clear error and its legal conclusions *de novo.* Additionally, because Coale's right to effective assistance of counsel is established in both the federal and Maryland constitutions, we must engage in our own

---

[21] Additionally, Coale asserts that the motions court abused its discretion in granting the motion for a continuance because:

> [T]he State conceded to the administrative judge that it "certainly could have tried to bring these matters in a sooner way," but had inexplicably delayed indicting Mr. Coale for a period of over 3 months after being notified of his requests for disposition in early July of 2008, despite conclusion of the police investigations into the incidents underlying the charges in all five cases back in December 2007–February 2008. When questioned by the administrative judge about its reasons for a good cause finding, the State gave no explanation whatsoever for this more than 3-month period of pre-indictment delay.

We do not read the transcript in quite the same way. The prosecutor told the motions court that his office could have tried to bring the cases against Coale to trial "in a sooner way." But the prosecutor made it clear that the problem with accomplishing this was that Howard County did not conclude its prosecution of that jurisdiction's three cases against Coale until December 1, 2008, that is, twelve days before the motions hearing. Coale did not argue to either the motions court in 2008 or to the post-conviction court in 2018 that it was practicable for the Anne Arundel prosecutors to try Coale before the Howard County cases were concluded. Nor does Coale make the argument to us.

independent analysis as to the reasonableness of Coale's trial counsel's conduct and the resulting prejudice, if any. *Syed*, 455 Md. at 73.

**Analysis**

**A. The parties' statutory arguments**

At the heart of the parties' disputes is a disagreement as to when Article III's 180-day limit for disposition of all pending charges began to run. In lockstep with the post-conviction court, Coale asserts that the starting date was July 13, 2008, when Wright, the IAD coordinator for the Howard County prosecutor's office, filed her request for statements of charges and related documents in the District Court for Howard County. This, reasons Coale, put all courts and all prosecutors in Maryland on notice of his invocation of his Article III rights. In contrast, the State contends that the Circuit Court for Anne Arundel County *never* received legally effective notice. The primary basis of the State's contention is Corr. Servs. § 8-416. Before addressing the merits of these contentions, we will summarize the relevant case law. Our analysis begins with *Fex v. Michigan*, 507 U.S. 43, 52 (1993).

In that case, prosecutors in Michigan filed a detainer against Fex, who was incarcerated in Indiana. Fex invoked his rights under Article III of the IAD. He was brought to trial 196 days after he had delivered his request to the Indiana warden but 177 days after the Michigan court and prosecutor received notice of the request. On appeal from his convictions, Fex argued that the 180-day limit for starting his trial began to run on the day that he delivered his request to the Indiana warden, thus requiring dismissal of the charges

with prejudice. *Id.* at 46. Writing for the majority of the Court, Justice Scalia explained that:

> The outcome of the present case turns upon the meaning of the phrase, in Article III(a), "within one hundred and eighty days after he shall have caused to be delivered." The issue, specifically, is whether, within the factual context before us, that phrase refers to (1) the time at which petitioner transmitted his notice and request (hereinafter simply "request") to the Indiana correctional authorities; or rather (2) the time at which the Michigan prosecutor and court (hereinafter simply "prosecutor") received that request.

*Id.* at 47.

The Court concluded that the language in Article III was ambiguous. After considering both the text and the interpretive consequences of the parties' proffered interpretations, the Court concluded that it is "the receiving State's receipt of the request [that] starts the clock." *Id.* at 51. The Court recognized that Fex made a "policy argument that fairness requires the burden of compliance with the requirements of the IAD to be placed entirely on the law enforcement officials involved, since the prisoner has little ability to enforce compliance and that any other approach would frustrate the higher purpose of the IAD[.]" The Court explained that the operative language of Article III was

> simply not susceptible of such a reading. Petitioner's "fairness" and "higher purpose" arguments are, in other words, more appropriately addressed to the legislatures of the contracting States, which adopted the IAD's text.
>
> \* \* \*
>
> [T]he 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.

*Id.* at 52.

*Fex's* holding is clearly limited to the language of Article III itself and the Court's analysis suggests that contracting states could enact legislation to address what the Court termed "fairness" and "higher purpose" concerns. The parties differ as to whether Corr. Servs. § 8-412 has that effect. Their arguments depend in large part on a quartet of decisions by the Court of Appeals: *State v. Pair*, 416 Md. 157 (2010), *Laster v. State,* 313 Md. 548 (1988), *Brooks v. State*, 329 Md. 98 (1993), and *State v. Barnes,* 273 Md. 195 (1974).

Our discussion of *Pair* begins with a summary of its convoluted factual and procedural background: Maryland prosecutors filed a detainer against Pair, an inmate in the Delaware prison system. He invoked his IAD Article III right to a speedy disposition of the pending Maryland charges. Because of a series of errors and oversights on the part of Maryland prosecutors and Delaware correctional officials, Pair was not transferred to Maryland when he should have been and was not tried within 180 days. When he eventually arrived in this State, he moved that the pending charges be dismissed with prejudice. He asserted that the State had failed to try him within 180 days of his initial invocation of his Article III rights. The circuit court granted the motion. 416 Md. at 166–68.

The substantive issues before the Court were whether the delays tolled the 180-day limit for disposing of the charges against Pair. *Id.* at 171–79. What is important for the purposes of the case before us is the Court of Appeals' conclusion that, irrespective of whether the fault for the delays was attributable to Delaware or to Maryland, the consequences of those delays should not be visited upon Pair. The Court explained:

Courts have routinely stressed that the IAD is remedial in nature and should be liberally construed in favor of the prisoner against whom the detainer is lodged. It is also understood that the burden of compliance with the procedural requirements of the IAD rests upon the party states and their agents; the prisoner, who is to benefit by this statute, is not to be held accountable for official administrative errors which deprive him of that benefit. . . .

\* \* \*

[T]he State, through its agents and its control of the procedural aspects of the IAD, controls the only ultimate guarantee of performance for the benefit of the prisoner.

\* \* \*

The purpose of the [IAD] is to enable a prisoner in another state to compel prompt trial of a criminal charge in [one state] without awaiting his release in the other state. That purpose is completely destroyed if state officials fail to perform the duties imposed upon them by the Act.

To conclude otherwise, not only misreads the purpose [of the IAD], but effectively emasculates it as well. The Legislature enacted no specific requirement that a prisoner, for whose benefit the IAD was enacted, be apprised of the technical aspects of the law. Indeed, the Legislature has placed one, and only one burden on the prisoner, that is, to ask the prison official who has custody over him to prepare and send the forms to the jurisdiction from which a detainer is lodged against him.

416 Md. at 177–78 (cleaned up).

In *Laster v. State*, 313 Md. 548 (1988), the Court addressed, among other issues, the requirements for notice for purposes of Articles III and IV of the IAD. In that case, as in the one before us, the defendant was facing charges in multiple Maryland jurisdictions and the process was muddled by errors on the part of custodial officials in the sending state.

In 1984, the Howard County State's Attorney's office filed a detainer against Laster, who was incarcerated in North Carolina awaiting trial on sexual assault charges. In 1985, Anne Arundel County prosecutors filed a detainer against Laster, who by that time had

been convicted in North Carolina and sentenced to imprisonment for life. Both the Howard County and the Anne Arundel County detainers involved sexual assault charges. The Anne Arundel detainer was soon followed by a request for temporary custody of Laster under Article IV of the IAD so that he could be prosecuted in that county on the pending charges. Article IV provides that trial on the underlying charges "shall be commenced within 120 days of the arrival of the prisoner in the receiving state." IAD Article IV(c), codified as Corr. Servs. § 8-406(c). After he received a copy of the Anne Arundel County's request for jurisdiction pursuant to Article *IV*, Laster filed a request for disposition of the charges under Article *III* of the IAD.[22] Apparently believing that the Anne Arundel and Howard County charges stemmed from the same indictment, the warden of the North Carolina prison never informed Laster of the Howard County detainer and transferred custody of Laster to Anne Arundel County for trial. 313 Md. at 558. Because of the warden's error, "none of the multiple jurisdiction procedures were followed by the warden or the Howard County prosecutors." *Id.* Howard County eventually obtained custody of Laster from Anne

---

[22] In pertinent part, Article III states that:

(1) the defendant shall be brought to trial within 180 days after he causes written notice of his invocation of article III rights to be delivered to "the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction" subject to the court's authority to grant a continuance for good cause shown (IAD article III(a), codified as Corr. Servs. § 8-405(a)); and

(2) a request for disposition of charges under article III "shall operate as a request for final disposition of all untried [charges] on the basis of which detainers have been lodged against the prisoner" from the same state. (IAD article III(d), codified as Corr. Servs.§ 8-405(d).

Arundel County pursuant to the Intrastate Detainer Act, and he was convicted of the underlying charges. *Id.* The trial began within 180 days of the date that Laster invoked his rights under Article III but not within 120 days of the date that he was remitted to the custody of Anne Arundel County pursuant to his Article IV request. His convictions were affirmed by this Court in an unreported opinion. *Id.* at 550.

The Court of Appeals granted Laster's writ of certiorari to consider two issues. The first was "whether all jurisdictions in the receiving state who have lodged detainers against the prisoner must bring the prisoner to trial within the time periods prescribed in Articles III and IV [of the IAD]." *Id.* at 558–59. The Court answered this question in the affirmative, basing its analysis in large part on language in the model forms promulgated by the Council of State Governments. 313 Md. at 559–60.

The second issue in *Laster* was whether the trials had to commence within 120 days of Laster's arrival in Maryland (as required in Article IV) or within 180 days of the date that prosecutors and courts received notice of the defendant's request for a speedy disposition of pending charges (as required in Article III). The Court held that the 180-day limit applied. 313 Md. at 561.

What is significant about *Laster* for our purposes is not what the Court decided but what the Court did not decide or, indeed, expressly consider in any fashion: The Court did not address the statutory predecessor to Corr. Servs. § 8-416, which provides that the period for disposition of charges does not begin to run until notice of a defendant's invocation of

- 31 -

his IAD rights is actually received by the appropriate court and the appropriate State's Attorney. Nor did the Court consider similar language in Articles III(a)[23] and IV.[24, 25]

We turn next to two decisions relied on by Coale that address the issues of notice and inter-agency cooperation in the context of the Intrastate Detainer Act, *State v. Barnes*, 273 Md. 195 (1974), and *Brooks v. State*, 329 Md. 98 (1993). As we previously noted, the IAD and the Intrastate Detainer Act were enacted on the same day and address the same problems and policy concerns. *See Barnes*, 273 Md. at 207 ("The provisions of [the Intrastate Detainer Act] were obviously intended to be supplementary to the provisions of the interstate act and being component parts of the same general system they should be

---

[23] Article III(a) (Corr. Servs.§ 8-405(a)) states in pertinent part:

> [T]the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of . . . the prisoner's request for a final disposition . . . provided that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

[24] Article IV(c) (Corr. Servs. § 8-406(c)) states:

> In respect of any proceeding made possible by this section (Article IV of the Agreement), trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

[25] In his concurring opinion, Judge McAuliffe pointed out that both the Howard County and the Anne Arundel County State's Attorney's Offices had, in fact, received actual notice of Laster's invocation of his IAD rights. 313 Md. at 569 n.1.

construed together to the extent possible. This view is strengthened by the fact that both statutes were enacted on the same date." (cleaned up)); *Brooks*, 329 Md. 105 (same).

While serving a sentence in a Maryland prison, Barnes was indicted for murder and a detainer was filed against him. When he learned of the detainer, he filed a request for a final disposition of the pending charge within 120 days pursuant to the Intrastate Detainer Act. The relevant part of that statute, then codified as Md. Code Article 27 § 616S, required a defendant who invoked the speedy trial provision to notify the appropriate State's Attorney's office and court by certified mail. *Barnes*, 273 Md. at 207 n.11.[26] It was undisputed that the Baltimore City State's Attorney's Office received notice by certified mail. The records of the Clerk of the Criminal Court for Baltimore City[27] did not indicate that it had received notice by certified mail, although it was undisputed that the Clerk's Office had received a copy of the notice received by the State's Attorney's Office. *Id.* at 197–98. It was also undisputed that prosecutors had forwarded Barnes's request to the court's criminal assignment office and neither the court nor the prosecutors did anything to bring the case to trial within the 120-day limit imposed by the Intrastate Detainer Act. *Id.* at 198–99.

---

[26] Former Article 27 § 616S is now codified as Corr. Servs. § 8-502. The current version of the statute no longer requires notice by certified mail.

[27] The Criminal Court for Baltimore City was one of several courts consolidated into the Circuit Court for Baltimore City in 1980 by constitutional amendment. *See* Dan Friedman, THE MARYLAND STATE CONSTITUTION A REFERENCE GUIDE 175 (2006).

Barnes eventually moved to dismiss the indictment. The motion was denied, and he was convicted of first-degree murder. His conviction was reversed by this Court[28] and the Court of Appeals granted the State's petition for certiorari. The State contended that because Barnes could not demonstrate strict compliance with the statutory notice requirements, the trial court correctly denied his motion to dismiss. In explaining why this argument was not persuasive, the Court noted that it was undisputed that the circuit court had actual notice and that:

> Both the State's Attorney of Baltimore City and the 'appropriate court'—the Criminal Assignment Office of the Supreme Bench of Baltimore City, the agency created by it to regulate the assignment of criminal cases—had actual notice of the respondent's request for disposition of the detainer, albeit that the notice received by the Criminal Assignment Office was by transmittal to it of the notice [received by] the state's attorney. . . .
>
> *Upon receipt of these notices it was incumbent upon the state's attorney to initiate action to see to it that the untried murder indictment was brought to trial within 120 days from the date of the delivery of the respondent's request to the state's attorney.* . . . His failure to so bring the case to trial was in no way caused by the fact that the assignment office had not received its notice by certified mail. In the absence of any 'necessary or reasonable continuance'—which the state's attorney failed to request—the statute became self-executing; when the 120 day period expired the Criminal Court of Baltimore was ousted of jurisdiction, the untried indictment had no further force and effect and an order was mandated dismissing the indictment with prejudice. To hold otherwise would render the statute ineffective and defeat its plain object.

*Id.* at 211 (emphasis added and cleaned up).

---

[28] *Barnes v. State*, 20 Md. App. 262 (1974).

In *Brooks*, the defendant was charged with robbery. Based upon the statement of charges filed in the District Court, the Anne Arundel State's Attorney's Office filed a detainer. Brooks invoked his right to trial within 120 days under the Intrastate Detainer Act by certified mail addressed to, and received by, the District Court and the State's Attorney's Office. 329 Md. at 101. After a preliminary hearing in the District Court, prosecutors filed charging documents in the circuit court. Brooks was not brought to trial within the statutory period and he filed a motion to dismiss, which the trial court denied. *Id.* at 102.

The issue before the Court of Appeals was whether Brooks had properly invoked his speedy trial rights by sending his notice to the District Court. The Court rejected the State's contention that the District Court was not the "appropriate court" to receive notice of Brooks' invocation of his rights because robbery was a felony within the exclusive jurisdiction of the circuit court. Because the term "appropriate court" was not defined in the Intrastate Detainer Act, the Court looked to the term's definition in Maryland's version of the IAD, which defined "appropriate court" as "a circuit court of a county or the District Court."[29] Among its reasons for concluding that the District Court was the appropriate court to receive notice of Brooks' invocation of his Intrastate Detainer Act rights, the Court explained why notice to the District Court was tantamount to notice to the circuit court:

> The State argues that once the information was filed, the burden was on
> Brooks to file a new speedy disposition request in the circuit court. This
> argument contravenes the rule that, once the defendant has complied with the

---

[29] The relevant statute is now codified as Corr. Servs. § 8-401(c).

notice provisions of the [Intrastate Detainer Act], the burden shifts to the State to bring the defendant to trial within the prescribed time period.

It is not consistent with the [Intrastate Detainer Act] or the Maryland Rules to require a defendant, who has complied with the notice provisions, to send a new notice under the circumstances here. When the criminal information was filed in the circuit court, the District Court record was transmitted to the circuit court pursuant to Maryland Rule 4-221(h). That rule places burdens on the State's Attorney and the District Court clerk.

> "Upon the filing of a charging document in the circuit court [after the District Court preliminary hearing], the State's Attorney shall promptly give notice of the filing to the clerk of the District Court. . . . When so notified, the clerk shall immediately forward all papers to the clerk of the circuit court in which the charging document is filed."

Rule 4-221(h) does not place a burden on the defendant to ensure that all documents in the District Court file, including any [Intrastate Detainer Act] request, are forwarded; that burden rests on the District Court clerk. *Thus, Maryland procedure contemplates that the District Court and the circuit court files will be merged and that any detainee's notice, filed in the District Court while it was the appropriate court, will be transmitted to the circuit court.* Meanwhile, the State's Attorney has a duplicate of the request for disposition of the charges under the [Intrastate Detainer Act] and is thereby alerted that the 120 day period is running.

*Id.* at 106–07 (some citations omitted and emphasis added).

With this as background, we return to the parties' contentions. It is Coale's position that Corr. Servs. § 8-412 imposed a duty upon Wright, the Howard County IAD coordinator, to reach out to her opposite number in Anne Arundel County. For this reason, Wright's knowledge that Coale had invoked his Article III rights should be imputed to the Anne Arundel County State's Attorney's Office as of the day that Wright received notice. To buttress his contention, he looks to *Pair* and *Laster.* Other than characterizing this argument as "legally incorrect," the State does not address § 8-412 in its brief. According

to the State, the relevant supplemental statute is Corr. Servs. § 8-416, which states that any written notice to a court or prosecutor required by either Article III or IV of the IAD, must be "actually received" to be effective. The State contends that the Circuit Court for Anne Arundel County never received a legally-effective notice.[30]

Resolving the parties' contentions is largely a matter of statutory interpretation. Statutory construction involves

> an examination of the statutory text in context, a review of legislative history to confirm conclusions or resolve questions from that examination, and a consideration of the consequences of alternative readings. "Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity. Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality."

---

[30] In his brief, Coale concedes that the Supreme Court's analysis in *Fex* points to the conclusion that Corr. Servs. § 8-416's requirement for actual receipt of notice is consistent with Article III of the IAD. Nonetheless, he asserts that "any interpretation of § 8-416 that is otherwise inconsistent with the plain language and meaning" of the any of the other Articles of the IAD would be invalid under the Supremacy Clause, U.S. Const. art. IV § 2. In support of this proposition, he cites *Bush v. Muncy,* 659 F.2d 402, 411–12 (4th Cir. 1981). We agree with his reading of *Bush.* However, and to the point, Coale does not direct us to any substantive provision of the IAD that is inconsistent with § 8-416.

Coale also asserts that "the Court of Appeals was "well aware" of Corr. Servs. § 8-416's statutory predecessor when it decided *Laster.* We agree, but the fact remains that the Laster Court did not address the former version of § 8-416 in its analysis. Nor was actual notice an issue in that case.

*Blue v. Prince George's County*, 434 Md. 681, 689 (2013) (quoting *Town of Oxford v. Koste*, 204 Md. App. 578, 585–86 (2012), *aff'd*, 431 Md. 14 (2013)). We usually identify the legislative purpose by considering the plain language of the statute "within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *State v. Johnson*, 415 Md. 413, 421–22 (2010). We also consider such statutes in conjunction with one another and, if possible. in a way that no provision of a statute is rendered superfluous or meaningless. *Moore v. State*, 424 Md. 118, 127 (2011).

The statutes in question are the IAD and Corr. Servs. §§ 8-412 and 8-416. Those statutes, together with the other supplementary statutes in title 8, subtitle 4 of the Correctional Services Article, as well as the Intrastate Detainer Act, "are component parts of the same general system [and] should be construed together to the extent possible" *Barnes*, 273 Md. 195, 207 (1974).

We start with Corr. Servs. § 8-412, which states:

> All courts, departments, agencies, officers, and employees of the State and its political subdivisions shall enforce the Agreement and cooperate with one another and other party states in enforcing the Agreement and effectuating its purpose.

"Shall" generally denotes a mandatory duty or obligation. *See, e.g., Parker v. State,* 193 Md. App. 469, 502 (2010) (citing *In re Najasha B*., 409 Md. 20, 32–33 (2009), and *Walzer v. Osborne*, 395 Md. 563, 580 (2006)). "Cooperate" means "to act or work with another or others to a common end[.]" *Webster's Third New International Dictionary* 501 (1986). "Enforce" is a protean word with a variety of meanings, the one relevant to § 8-

412 is "to put in force, cause to take effect: give effect to[.]" *Id.* at 751. "Effectuate" is a synonym for "effect" when the latter is used as a verb. *Id.* at 725. In its verbal form, "effect" means "to bring about, especially through successful use of factors contributory to the result." *Id.* at 724.

The State directs us to Corr. Servs. § 8-416 which states:

> As to any request by an individual confined in another party state for trial in this State, written notice may not be deemed to have been delivered to the prosecuting officer and the appropriate court of this State in accordance with § 8-405(a) (Article III (a) of the Agreement) of this subtitle and notification may not be deemed to have been given in accordance with § 8-405(d) or § 8-406(b) of this subtitle (Article III (d) and Article IV (b) of the Agreement) until the notice or notification is actually received by the appropriate court and the appropriate State's Attorney of this State, the State's Attorney's deputy or assistant, or any other person empowered to receive mail on behalf of the State's Attorney.

The State contends that, because no written notice was ever provided to the Circuit Court for Anne Arundel County by anyone, the 180-day limit for disposition of pending charges was never effectively invoked by Coale. For support, the State directs us to the Supreme Court analysis in *Fex v. Michigan*, as well as two decisions by this Court, *Thurman v. State*, 89 Md. App. 125, 132 (1991), and *Hines v. State*, 58 Md. App. 637, 650 (1984).

The State's contentions are not persuasive. As we have explained, the Supreme Court's analysis in *Fex* was limited to the language of the IAD itself. The Supreme Court acknowledged that there was nothing that prevented individual states from addressing by legislation what the Court termed "fairness" and "higher purpose" concerns. 507 U.S. at 52. The State cites *Thurman v. State*, 89 Md. App. 125 (1991), and *Hines v. State*, 58 Md.

App. 637 (1984), for the proposition that "[t]he burden was on Coale to ensure that all the notice requirements were met, not the State's Attorney's Office or the court." Certainly, both cases contain statements to that effect. But there are differences between those cases and Coale's: One is that neither Thurman nor Hines depended upon officials of the sending state to provide notice; Thurman hired a lawyer to do this, 89 Md. App. at 127, and Hines attempted to do it himself. 58 Md. App. at 647. This distinction is significant in light of the Court's analysis in *Pair*, which indicates that a state official's failure to perform his or her duties should not prejudice an inmate seeking to assert his IAD rights. 416 Md. at 177–78. Second, neither case addressed the statutory predecessor to Corr. Servs. § 8-412.

We conclude that both statutes mean precisely what they say. Section 8-412 imposes an affirmative duty on State and local officials, including prosecutors, to work with one another and with the judicial system in enforcing the terms and effectuating the purposes of the IAD.[31, 32] And among those purposes is disposing of charges within the time limits specified in Articles III and IV.

---

[31] The purpose of the IAD is set out in Article I (Corr. Servs. § 8-403) of the compact:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this Agreement to encourage the expeditious and orderly disposition of such charges. . . .

[32] In this case, it is not necessary for us to decide whether Corr. Servs. § 8-412 imposes a corresponding duty upon Maryland courts.

Our reading of the statute aligns with the Court's reasoning in *Barnes* in the context of the Intrastate Detainer Act. 273 Md. at 211 ("Upon receipt of these notices it was incumbent upon the state's attorney to initiate action to see to it that the untried murder indictment was brought to trial within 120 days from the date of the delivery of the respondent's request to the state's attorney."). Because the IAD and the Intrastate Detainer Act are part of the same legislative scheme and "should be construed together to the extent possible," *Barnes,* 273 Md. at 207, we can conceive of no reason why the Court's reasoning in *Barnes* should not apply to cases arising under the IAD. Additionally, in our view this reading of the statute is consistent with the policy considerations identified by the Court of Appeals in *Pair.*

This interpretation of § 8-412 does not conflict with § 8-416. The latter statute states that the 180-day period for resolving pending charges begins to run when the relevant court and the relevant prosecutor receive notice of the defendant's invocation of his Article III rights. But as *Barnes* makes clear, it is actual notice and not exact compliance with the statute that matters. Although prosecutors have a duty to inform the relevant court that a defendant has invoked his IAD rights, that duty cannot arise until the prosecutors themselves have actual notice of a defendant's invocation of his rights under Article III. Additionally, that prosecutors have such a duty does not conflict with the principle that, for a defendant's invocation of Article III to be effective, *both* the court and the prosecutor must have notice.

## B. The post-conviction court's analysis revisited

In reaching its result, the post-conviction court concluded:

(1) The parties did not dispute that the District Court of Maryland for Howard County was placed on notice of Coale's invocation of his Article III rights on June 13, 2008. The 180-day period for disposition began to run on that day.

(2) The June 13th filing in the District Court for Howard County constituted notice to all Maryland courts and agencies as of that date of Coale's invocation of his IAD rights and it was incumbent upon the Howard County State's Attorney's Office to notify the Anne Arundel County State's Attorney's Office. The post-conviction court based these conclusions on its reading of Corr. Servs. § 8-412 and language from the Court of Appeals' decisions in *State v. Pair* and *Laster v. State*.

(3) The Article III 180-day limit expired on December 10, 2008. Because the prosecutor requested a continuance on December 12, the request was untimely.

(4) If Coale's trial counsel had presented the documentation necessary to establish the date on which the District Court for Howard County had received notice to the scheduling court and asked the court to dismiss the charges, there was a substantial likelihood that either the court would have granted the motion or that Coale's convictions would have been reversed on appeal.

There are several problems with the post-conviction court's reasoning.

Initially, as the State points out, the post-conviction court was incorrect when it stated that the State did not dispute Coale's assertion that the District Court received notice of his

invocation of his Article III rights on June 13, 2008. The transcript of the hearing makes it clear that it was the State's position that, even if notice to the Anne Arundel State's Attorney's Office was tantamount to notice to the Circuit Court for Anne Arundel County, the Anne Arundel prosecutors did not receive notice until July 15, 2008, which was when Wright, the IAD coordinator for the Howard County State's Attorney's Office, faxed copies of Coale's paperwork to her opposite number in Anne Arundel County.

Second, necessarily implicit in the post-conviction court's conclusion that the requests filed by Wright on June 13, 2008, placed all Maryland courts and all Maryland prosecutors on notice of Coale's invocation of his IAD rights was a finding that there was something in those requests that would have placed lawyers and court officials on notice that Coale had done so. We have attached an image of one of those documents in the appendix to this opinion.[33] There is nothing in that document that references the IAD, or detainers, or that Coale had asserted his right under Article III for disposition of all pending charges against him within 180 days, or that he had charges pending against him in Anne Arundel County as well as Howard County. Thus, the implicit but necessary factual finding that was the basis for the post-conviction court's analysis was wrong.

Third, assuming for purposes of analysis that Wright's request for copies on June 13, 2008, was sufficient to place the District Court for Howard County on notice that Coale had invoked his Article III rights, the request would not have placed any court other than

---

[33] Wright filed a request form for each of the cases pending against Coale, and they are identical other than the District Court case number.

the Circuit Court for Howard County on notice of his invocation. This is because the Howard County District Court files were transferred to the Howard County Circuit Court when charges were filed in that court. *See Brooks*, 329 Md. at 106–07 (stating that Md. Rule 4-221(h) "contemplates that the District Court and the circuit court files will be merged and that any detainee's notice, filed in the District Court while it was the appropriate court, will be transmitted to the circuit court.").[34]

To this Court, Coale argues that Wright's personal knowledge that Coale had invoked his Article III rights should be imputed to the District Court for Howard County. But court filings, like other public documents, are interpreted objectively. *Cf. Taylor v. Mandel*, 402 Md. 109, 125 (2007) ("[C]ourt orders are construed in the same manner as other written documents and contracts."). The earliest date that someone reviewing the records in the District Court for Howard County should have realized—as opposed to might have guessed—that Coale had invoked Article III was June 26, 2008. On that day, the Howard County State's Attorney filed the IAD form VII.[35] That form explicitly stated that it was filed "in connection with *a prisoner's* request for a disposition of a detainer." (Emphasis

---

[34] We are of course aware that that there is one District Court of Maryland. *See* Md. Const. art. IV § 1; Courts & Jud. Proc. § 1-601. But, as the *Brooks* Court explained, Md. Rule 4-221 provides that the District Court file is merged with the circuit court file when a criminal case is moved to the circuit court. There is no mechanism by which filings in the District Court for one county are merged with court files in other counties. Corr. Servs. § 8-412 does not change this—the statute requires State and local officials to cooperate with one another in enforcing the IAD. The statute does not require officials to be telepathic or clairvoyant.

[35] We have included an image of the IAD form VII in our appendix.

added.) But even then, there was nothing in the document or in the records of the District Court for Howard County that suggested that Coale was facing charges in another county.

Fourth, the post-conviction court's analysis is not compatible with Article III, which provides that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex*, 507 US at 52. The post-conviction court's reasoning is equally inconsistent with Corr. Servs. § 8-416 which states that notice of a defendant's invocation of his Article III rights is not effective "until the notice or notification is actually received by the appropriate court and the appropriate State's Attorney of this State[.]"

In this context, Coale's reliance upon *Pair* and *Laster* as support for the post-conviction court's conclusion is unavailing. The issues in *Pair* did not involve adequacy of notice under Article III.[36] In *Laster,* prosecutors from Anne Arundel and Howard counties issued detainers and the North Carolina warden mailed the defendant's invocations of his IAD rights only to the Anne Arundel prosecutors. 313 Md. at 558. But this fact played no part in the Court's resolutions of the issues raised in that case.[37]

---

[36] In its opinion, the Court characterized Pair's Article III request as "timely" without further discussion or analysis. 416 Md. at 165.

[37] Presumably this was because neither party raised the issue to the Court. As Judge McAuliffe noted in his concurring opinion, both the Howard and the Anne Arundel State's Attorney's Offices had actual notice of Laster's invocation of his Article III rights. 313 Md. at 569 n.1.

For these reasons, the post-conviction court's conclusion that June 13, 2008 marked the beginning of the 180-day period for disposition of the charges pending against Coale in Anne Arundel County was incorrect. Because the court erred as to the starting date, the court erred also when it concluded that the State's motion for a continuance was untimely because it had been made 182 days later.

As we have discussed, Coale's IAD Form II, which constituted his assertion of his right to a speedy disposition of his Anne Arundel charges, did not identify any court. Because Corr. Servs. § 8-412 requires prosecutors to cooperate with other State agencies (including courts) "in enforcing the [IAD] and effectuating its purpose," the prosecutors should have taken steps to notify the appropriate court. But this obligation could not have arisen until July 15, 2008. That was the date that Coale's Form II and its accompanying paperwork was actually received by the Anne Arundel County State's Attorney's Office, albeit from Wright instead of the California warden. With July 15th as the starting day, the 180-day limit expired on January 12, 2009. The State made its motion for continuances on December 12, 2008.

Coale also argues that the court would not have granted the State's motion for a continuance "had trial counsel simply put forth documentation to satisfy the judge that actual notice had been received . . . by the State's Attorney's Office and District Court of Maryland in Howard County" by June 26 or July 8, 2008.[38] This is so, says Coale, because

---

[38] June 26th was the date that the Howard County State's Attorney filed the IAD Form VII which certified his willingness to accept custody of Coale for purposes of trial; July

the sole basis of the court's decision to grant the motion was because trial counsel "put forth no documentation or proof of [Coale's] compliance with the statutory notice requirements under Maryland's IAD."

We do not agree. It is certainly correct that the motions court was concerned about the lack of documentation presented to it as to when or if the circuit court had been given notice of Coale's invocation of his Article III rights. But earlier in the hearing, the prosecutor explained to the court that the Anne Arundel prosecutors had waited until Coale's Howard County charges had been resolved. The prosecutor also correctly stated that there were multiple cases pending in Anne Arundel County against Coale and that trying them would involve a large number of witnesses. Additionally, the prosecutor and defense counsel disagreed as to whether there were outstanding discovery and suppression issues. Moreover, that there had been cases in Howard County and there were multiple cases pending in Anne Arundel County could constitute good cause for granting the continuances. *See Laster*, 313 Md. at 560 ("Clearly, the prospect of multiple trials in the receiving state would establish good cause for a continuance" beyond the IAD time limits). Although the motions court was certainly concerned about the absence of documentation regarding the notice issue, there was nothing that suggested that the court disregarded the very cogent reasons advanced by the State in support of its motion. *See John O. v. Jane O.*, 90 Md. App. 406, 429 (1992) ("The trial judge need not articulate each item or piece of

8th was the date that a District Court judge certified that the State's Attorney was the appropriate official to take custody of Coale for IAD purposes.

- 47 -

evidence she or he has considered in reaching a decision.").[39]

A court abuses its discretion when its decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *Cousins v. State*, 231 Md. App. 417, 438 (2017). Against this standard, we cannot say that the motions court abused its discretion when it granted the State's motion.

For these reasons, we do not agree with the post-conviction court's conclusion that there was a reasonable probability that either the motions court or an appellate court would have concluded that the State had violated the speedy disposition provision of Article III.

### C. Our independent review

To be sure, Coale's 2008 trial counsel could have been better prepared for the December 12, 2008 status conference and motions hearing. But a deficient performance is not enough—Coale must also demonstrate that he was prejudiced as a result. To do so, he must show that there is "(1) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; or (2) that the result of the proceeding was fundamentally unfair or unreliable." *Syed*, 463 Md. at 87. A petitioner satisfies the reasonable probability standard by showing that "there was a substantial or

---

[39] Finally, the court commented that the State was "proceed[ing] at [its] peril . . . if it turns out that actual notice was given[.]" This suggests that the court was willing consider a motion to dismiss the charges against Coale if he had been able to document his claim that notice had been provided to the circuit court on the date asserted by Coale's counsel. However, for the reasons that we have explained, additional information would not have supported Coale's contention that his IAD rights had been violated.

significant possibility that the [outcome of the proceeding] would have been affected." *Id.* at 86–77.

Based on our independent review of the record, we conclude that Coale was not prejudiced by the shortcomings in trial counsel's performance. This is not a case in which better preparation by his lawyer might have uncovered relevant facts or tenable legal arguments to oppose the State's motion for a continuance. However thorough trial counsel's preparation might have been, it would have uncovered the relevant facts and the legal principles that we have set out in this opinion. And those facts and legal principles do not come close to demonstrating either that the motions court abused its discretion in granting the State's requests for continuances or that the circuit court would have granted a hypothetical motion to dismiss based upon an asserted violation of the IAD. We are satisfied that there was nothing that defense counsel could have done that would have resulted in a substantial possibility that the outcome in the 2008–09 criminal proceedings would have been different.

Nor do we conclude that Coale's convictions were "fundamentally unfair or unreliable." *Newton v. State*, 455 Md. 341, 355 (2017)). Although the Anne Arundel prosecutors could have, and should have, taken steps earlier in the process to put the circuit court on notice that Coale had invoked his IAD rights, any such notice would not have changed the fact that Coale's Howard County charges were not resolved until December 1, 2008. And the Anne Arundel prosecutors' obligation to notify the court accrued on July 15, 2008, which was the day that their office actually received Coale's Form II and its

accompanying paperwork. The 180-day limit from that day expired on January 12, 2009. Even after the continuances were granted, Coale's cases were scheduled for disposition on January 6, 2009, that is, within the original 180-day period. It is true that there was a postponement because of a death in defense counsel's family, but this cannot be held against the State. His cases were resolved by a plea agreement on January 27, 2009. Coale's convictions, which were based upon an agreed statement of facts, were certainly not fundamentally unreliable. Nor were they unfair, fundamentally or otherwise.

**THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IS REVERSED. APPELLEE TO PAY COSTS.**

Appendix

A.

Coale's IAD Form II



T-561  P.004/013  F-850
STATE OF CALIFORNIA  DEPARTMENT OF CORRECTIONS
CDC 1665 (Rev 2/96)

## FORM II
## AGREEMENT ON DETAINERS

Six copies, if only one jurisdiction within the state involved has an indictment, information or complaint pending.
Additional copies will be necessary for particasting officials application of apart if detainers have been lodged by other jurisdictions within the state involved.
One copy should be retained by the inmate. One signed copy should be retained by the Warden. Signed copies must be sent to the Agreement Administrator of the sending and receiving states, the prosecuting official of the jurisdiction which placed the detainer, and the clerk of the court which has jurisdiction over documents. The copies for the prosecuting official and the court must be transmitted by certified or registered mail, return receipt requested.

### INMATE'S NOTICE OF PLACEMENT OF IMPRISONMENT AND REQUEST FOR
### DISPOSITION OF INDICTMENTS, INFORMATIONS OR COMPLAINTS



TO: Prosecuting Officer, ANNE ARUNDEL COUNTY, MARYLAND STATE

Jurisdiction

DISTRICT ATTORNEY, COUNTY OF ANNE ARUNDEL, STATE OF MARYLAND
Jurisdiction

And to all other prosecuting officers and courts of jurisdictions listed below from which indictments, informations or complaints are pending.

You are hereby notified that the undersigned is now imprisoned in

California Men's Colony – West Facility at San Luis Obispo, California

and hereby request that a final disposition be made of the following indictments, informations or complaints now pending against me:

1. WARRANT # 4A00184104
   CHARGES: BURGLARY 1ST DEGREE & THEFT LESS $500 VALUE
2. WARRANT # 5A00018619?
   CHARGES: BURGLARY 1ST DEGREE, THEFT $500 PLUS VALUE & MAL DEST PROP VALUE
3. WARRANT # 5A00184196
   CHARGES: BURGLARY 1ST DEGREE, THEFT $500 PLUS VALUE
4. WARRANT #1A00184073
   CHARGES: BURGLARY 1ST DEGREE & MAL DEST PROP VALUE
5. WARRANT # 0A00184072
   CHARGES: BURGLARY 1ST DEGREE & MAL DEST PROP VALUE
6. WARRANT # A00184282
   CHARGES: BURGLARY 1ST DEGREE, THEFT LESS $500 VALUE & MAL DEST PROP VALUE
7. WARRANT # 5A00184182
   CHARGES: BURGLARY FIRST DEGREE, ASSAULT 1ST DEGREE/KIDNAPING & RECKLESS ENDANGERMENT
8. WARRANT # KZ35919
   CHARGES: FTA ORIG CHG PERSON DRIVIN GMV ON REVOKED LIC
9. WARRANT # ET09458
   CHARGES: FTA ORIG CHG PERSON DRIVING ONSUSP LICENSE & DRIVING WHILE SUSPENDED



Failure to take action in accordance with the Agreement on Detainers, to which your state is committed by law, will result in the invalidation of the indictments, informations or complaints.

I hereby agree that this request will operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against me from your state. I also agree that this request shall be deemed to be my waiver of extradition with respect to any charge or proceeding

contemplated hereby or included herein, and a waiver of extradition to your state to serve any sentence there imposed upon me, after completion of my term of imprisonment in this state. I also agree that this request shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purpose of the Agreement on Detainers and a further consent voluntarily to be returned to the institution in which I now am confined.

If jurisdiction over this matter is properly in another agency, court, or officer, please designate the proper agency, court, or officer and return this form to sender.

The required Certificate of Inmate Status of Offer of Temporary Custody is attached.

| INMATE'S Printed Name and CDC Number | INMATE'S Signature | Date Signed |
|---|---|---|
| COALE, SCOTT CORY G07543 | Scott Coale | 5/29/08 |
| WITNESS' Printed Name and Title | WITNESS' Signature | Date Signed |
| L.L. BUCKLEY CORRECTIONAL COUNSELOR I | | 5-29-08 |

B.

The request for documents relating to Coale's pending cases in the District Court for Howard County filed on June 13, 2008

E-FILED
Anne Arundel Circuit Court
3/17/2016 1:38:04 PM

STATEMENT OF CHARGES REQUEST
HOWARD COUNTY DISTRICT COURT

Date of Request: 6/13/08

DEFENDANT'S NAME: Scott Cory Coale

Case Number: IT 57177

Trial Date: Warrant Status

Requesting Agency: SAO - Navarre

_____ Statement of Charges

_____ Violation of Probation Report

_____ Probation Order

_____ Commitment Order

RECEIVED 2008 JUN 13 P 4: 15 DISTRICT COURT OF MD 10TH DIST HOWARD CO

__x__ Other SIX (6) TRUE TEST COPIES OF THE FOLLOWING: SEE BELOW.

Attached is a copy of your request:

Rosa Day
Criminal/Traffic Supervisor

1. INITIAL APPEARANCE
2. STATEMENT OF CHARGES ✓
3. CHARGE SUMMARY
4. STATEMENT OF PROBABLE CAUSE
5. APPLICATION FOR STATEMENT OF CHARGES ✓
6. BENCH WARRANT ✓
7. CRIMINAL SUMMONS ON CHARGING DOCUMENT

Done
UP
6-16-08

Page 366

- 53 -

C.

Howard County State's Attorney's IAD Form VII,
filed on June 26, 2008 and certified by the District Court on July 8, 2008

**AGREEMENT ON DETAINERS: FORM VII**

PROSECUTOR'S ACCEPTANCE OF TEMPORARY CUSTODY
OFFERED IN CONNECTION WITH A PRISONER'S
REQUEST FOR DISPOSITION OF A DETAINER

DATE:        JUNE 26, 2008

TO:        J. MARSHALL, WARDEN
CALIFORNIA MEN'S COLONY, WEST FACILITY
P.O. BOX 8101
SAN LUIS OBISOP, CALIFORMIA 93409

In response to your offer of temporary custody regarding SCOTT COREY COALE, CDC #G07543, who is presently under complaint in Ellicott City. Howard County, Maryland , of which I am the State's Attorney, please be advised that I accept temporary custody and that I propose to bring this person to trial on the indictment, information or complaint named in the offer within the time specified in Article III(a) of the Agreement on Detainers.

Signed: _____

Title:  State's Attorney for Howard County

I hereby certify that the person whose signature appears above is an appropriate officer within the meaning of ArticleIV(a) and that the facts recited in this request for temporary custody are correct and that having duly recorded said request I hereby transmit it for action in accordance with its terms and the provisions of the Agreement or Detainers.

Dated: _7/8/08_     Signed: _____
District Court for Howard County

Page 405