*State of Maryland v. Robert Lee Meadows*, No. 1750, Sept. Term 2022. Opinion by Arthur, J.

**CRIMINAL LAW – INTERSTATE AGREEMENT ON DETAINERS – WAIVER**

The Interstate Agreement on Detainers Act (the "IAD"), Maryland Code (1999, 2017 Repl. Vol.), §§ 8-401 through 8-411 of the Correctional Services Article, gives prisoners incarcerated in one state the right to request the prompt disposition of charges filed against them in another state. Once a prisoner invokes the right under the IAD, the charging state has 180 days to commence the trial. The burden of bringing the prisoner to trial falls on the charging state. If that state fails to bring the prisoner to trial within 180 days, the IAD requires that the charges be dismissed with prejudice. However, the court may extend the deadline upon a finding of good cause. And the prisoner may waive the right to have the trial commence within the 180-day deadline.

In this case, the defendant, incarcerated in Pennsylvania, requested the final disposition of charges filed against him in the District Court of Maryland for Cecil County. He invoked his rights under the IAD and was sent to Maryland for trial. The case was transferred to the Circuit Court for Cecil County when the State indicted the defendant in the circuit court and dismissed the district court charges. During a pre-trial conference, the court mentioned the trial date, which fell outside of the 180-day deadline. Neither the defendant nor his counsel objected to the trial date. Instead, they remained silent. After the 180-day deadline had passed, defense counsel filed a motion to dismiss. The circuit court dismissed the indictment because the State had failed to bring the defendant to trial within the 180-day deadline.

The Appellate Court of Maryland held that a defendant does not waive the speedy trial right under the IAD by remaining silent and not objecting when the court sets a trial date that falls after the 180-day deadline. The burden of bringing the defendant to trial within the deadline lies solely with the State. The IAD places no obligation on the defendant to remind the State of its statutory duty. Silence when the trial date is set does not amount to a waiver under the IAD. Accordingly, the Court held that the circuit court did not err in dismissing the indictment with prejudice.

**CRIMINAL LAW – INTERSTATE AGREEMENT ON DETAINERS - TRANSFER OF CHARGES FROM DISTRICT COURT TO CIRCUIT COURT**

The Appellate Court of Maryland held that the State did not satisfy the 180-day deadline in the IAD when it dismissed the district court charges on which the detainer was based and indicted the defendant in the circuit court on charges arising from the same incident. The defendant's case was a single, continuous proceeding for purposes of the speedy trial deadline under the IAD.

Circuit Court for Cecil County
Case No. C-07-CR-22-000501

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1750

September Term, 2022

_____

STATE OF MARYLAND

v.

ROBERT LEE MEADOWS

_____

Arthur,
Shaw,
Sharer, J. Frederick
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.

_____

Filed: April 22, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Interstate Agreement on Detainers Act (the "IAD"), Maryland Code (1999, 2017 Repl. Vol.), §§ 8-401 through 8-411 of the Correctional Services Article ("Corr. Servs."), gives prisoners incarcerated in one state the right to request the prompt disposition of charges filed against them in another state.

Once a prisoner invokes the IAD to request the disposition of the charges pending in another state, the charging state has 180 days to commence the trial. The burden of bringing the prisoner to trial falls on the charging state. If that state fails to bring the prisoner to trial within 180 days, the IAD requires that the charges be dismissed with prejudice. However, the court may extend the deadline upon a finding of good cause. And the prisoner may waive the right to have the trial commence within the 180-day deadline.

This case principally concerns whether a prisoner waives the right to have the trial commence within 180 days by remaining silent and not objecting when the court schedules the trial to begin on a date after the 180-day deadline has run. The case also concerns whether the State can avoid the deadline by dismissing the district court charges on which the prisoner has requested to be tried and indicting the prisoner on the same or similar charges in the circuit court.

When confronted with these questions, the Circuit Court for Cecil County dismissed the indictment. For the reasons stated below, we shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2021, the District Court of Maryland for Cecil County issued a statement of charges and an arrest warrant for appellee Robert Lee Meadows. The

statement of charges charged Meadows with first-degree assault, illegal possession of a firearm, possession of a handgun in a vehicle, and other related offenses. At the time, Meadows was incarcerated in Delaware County, Pennsylvania.

On June 15, 2021, the State of Maryland issued a detainer—"'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction'"[1]—against Meadows. On the following day, Meadows received formal notice of the detainer and signed a waiver of extradition, consenting to be transferred to Maryland to face the criminal charges.

On February 17, 2022, Meadows invoked his rights under the IAD to request the final disposition of all untried indictments, informations, or complaints that had been lodged against him by the State of Maryland. *See* Corr. Servs. § 8-405(a). The Office of the State's Attorney for Cecil County received Meadows's IAD request on March 15, 2022. The District Court of Maryland for Cecil County received Meadows's IAD request on March 25, 2022. The parties agree that under the IAD the State was required to bring Meadows to trial by September 21, 2022—180 days from the date when both the State's Attorney and the district court had received Meadows's request. *See* Corr. Servs. § 8-405(a).

On March 31, 2022, the State's Attorney requested that a trial be scheduled in the District Court of Maryland for Cecil County within 180 days of February 17, 2022. The

---

[1] *State v. Jefferson*, 319 Md. 674, 678 n.2 (1990) (quoting H.R. Rep. No. 91-1018, at 2 (1970); S. Rep. No. 91-1356, at 2 (1970); U.S. Code Cong & Admin. News 1970, at 4864, 4865).

district court directed that the case be "[s]et for trial prior to 6/30/22." The district court did not have jurisdiction over several of the felonies with which Meadows was charged.

On May 20, 2022, Meadows was transported to the Cecil County Detention Center.

On May 25, 2022, a grand jury in the Circuit Court for Cecil County indicted Meadows on a total of 24 counts—five counts of first-degree assault, five counts of the use of a firearm in a crime of violence, one count of possession of a regulated firearm after being convicted of a crime of violence, and other related charges. On May 26, 2022, the State's Attorney informed the district court that the grand jury had indicted Meadows and asked the district court to forward the case to the circuit court and to recall the arrest warrant. On the following day, May 27, 2022, the State entered a plea of nolle prosequi on all of the district court charges. Meadows was arraigned in the circuit court on June 1, 2022.

On June 6, 2022, the circuit court's assignment office scheduled a status conference on July 19, 2022, a pre-trial hearing on November 14, 2022, and a three-day trial beginning on November 15, 2022. Meadows's counsel entered his appearance and received notice of the trial dates on June 16, 2022.

Counsel for Meadows and the State attended the status conference on July 19, 2022. At the status conference, the following conversation occurred:

> [STATE:] Your Honor, we are here for status conference this morning. This matter is set for trial, sorry, pre-trial conference November 14, trial set for two days, November 16 and 17.

3

I have provided discovery to the Office of the Public Defender.  I understand that they have received it, although [Defense Counsel] is still reviewing it. . . .

[THE COURT:]  So I have pre-trial November 14, and then a three-day trial, 15, 16, 17.

[STATE:]  I thought it was two days, 16 and 17. . . .

[THE COURT:]  I have November 15, 16, and 17.

[STATE:]  —set for three days. . . .

When counsel for Meadows had the opportunity to address the court, he did not mention the proposed trial date.  Instead, he spoke of the amount of discovery that the case would involve:

[COUNSEL FOR MEADOWS:]  There [are] five alleged victims, Your Honor.  I mean, their statements are relatively short, they are written statements that have been provided so far.  I don't believe there were any actual recorded statements other than the ones in writing.  But again, I am reviewing it.  Voluminous discovery was disclosed on July 7th, so it has only been a few days . . . to review it.  But I will review it with Mr. Meadows and will raise any issues that need to be raised.

At the conclusion of the status conference, the court asked the parties whether they had anything else to bring to the court's attention:

[THE COURT:]  So there aren't any other issues then, Mr. [Prosecutor]?

[STATE:]  Nothing from the State, Your Honor.  Thank you.

[THE COURT:]  Any other issues, [defense counsel]?

[COUNSEL FOR MEADOWS:]  Not at this time.  They will be raised by motion.

[THE COURT:]  All right.  Thank you very much.  Then we will see you November 14 at 1:30.  Thank you.

4

[COUNSEL FOR MEADOWS:]  Thank you.

The 180-day deadline ran on September 21, 2022.  On October 7, 2022, Meadows filed a motion to dismiss, arguing that the State had violated his rights under the IAD by failing to bring him to trial within 180 days of when both the district court and the State's Attorney had received his request.

On November 14, 2022, the court heard argument on Meadows's motion to dismiss.  In opposing the motion, the State argued that Meadows had waived his rights under the IAD by acquiescing in a trial date that fell beyond the 180-day deadline.  The State also argued that the circuit court indictment was a "brand new charging document," separate from (though "similar" to) the statement of charges in the district court.  Thus, the State argued that it had disposed of the relevant charges—the charges on which Meadows had requested to be tried—within the 180-day deadline when it dismissed the district court case on May 27, 2022.  The court granted Meadows's motion.

The State noted a timely appeal.[2]

### QUESTION PRESENTED

The State presents one question on appeal: "Did the motions court err when it granted Meadows's motion to dismiss based on a putative violation of the Interstate Agreement on Detainers?"  We perceive no error.

---

[2] Under Maryland Code (1974, 2020 Repl. Vol., Supp. 2023), § 12-302(c)(2) of the Courts and Judicial Proceedings Article, "[t]he State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition."

STANDARD OF REVIEW

"The propriety of the Circuit Court's dismissal of the charges hinges on whether that court correctly interpreted and applied the IAD to the facts before it." *State v. Pair*, 416 Md. 157, 168 (2010). "As the facts are not in dispute, we have only to decide whether the court was legally correct in its interpretation of the law." *Id*.; *accord Pitts v. State*, 205 Md. App. 477, 486 (2012).

## DISCUSSION

### A. The Interstate Agreement on Detainers

"The IAD, to which Maryland became a signatory in 1965, is a congressionally sanctioned compact among forty-eight states, the Federal Government, Puerto Rico, the U.S. Virgin Islands, and the District of Columbia." *State v. Pair*, 416 Md. at 160. In Maryland the IAD is codified at §§ 8-401 through 8-411 of the Correctional Services Article.[3]

The IAD consists of nine articles, "which, in Maryland, correspond to sections of the Correctional Services Article of the Maryland Code." *Aleman v. State*, 469 Md. 397, 406-07 (2020).

Article I of the IAD[4] states that "charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties

---

[3] A detailed account of the history and adoption of the IAD in Maryland is provided in *Aleman v. State*, 469 Md. 397, 403-06 (2020).

[4] Corr. Servs. § 8-403.

which obstruct programs of prisoner treatment and rehabilitation." "Accordingly," Article I states, "it is the policy of the party states and the purpose of this Agreement to encourage the expeditious and orderly disposition of such charges[.]" Corr. Servs. § 8-403.

In *Carchman v. Nash*, 473 U.S. 716, 729-30 (1985), the United States Supreme Court explained part of the motivation for the IAD:

> Adoption of the Agreement was motivated in part by a practice of filing detainers based on untried criminal charges that had little basis. These detainers often would be withdrawn shortly before the prisoner was released. Even though unsubstantiated, the detainers would have a detrimental effect on the prisoner's treatment. Article III enables a prisoner to require the State lodging the detainer either to drop the charge and resulting detainer or to bring the prisoner to trial. In this way, the prisoner can clear his record of detainers based on unsubstantiated charges.

(Footnotes omitted.) *Accord Aleman v. State*, 469 Md. at 404; *State v. Jefferson*, 319 Md. 674, 679 (1990); *Pitts v. State*, 205 Md. App. at 484-85.

The IAD recognizes that "[p]ending detainers can restrict an inmate's eligibility for training and educational programs, transfers to moderate or minimum-security facilities, and similar measures intended to assist in the rehabilitation of the inmate." *State v. Coale*, 250 Md. App. 1, 7 (2021). For example, because of a detainer:

> The inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons . . . (4) ineligible for trustee [sic] status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions . . .; (8) not entitled to preferred prison jobs . . .; (9) inhibited by the denial of possibility of parole or any commutation of his sentence; [and] (10) caused anxiety and thus hindered in the overall

> rehabilitation process since he cannot take maximum advantage of his institutional opportunities.

*Carchman v. Nash*, 473 U.S. at 730 n.8; *accord State v. Jefferson*, 319 Md. at 679-80; *State v. Coale*, 250 Md. App. at 7 n.2; *Pitts v. State*, 205 Md. App. at 483 n.6.

Thus, a purpose of the IAD "is to help effectuate the rehabilitative process for those who are incarcerated[.]" *State v. Pair*, 416 Md. at 164. The IAD endeavors to achieve that purpose by facilitating the speedy disposition of charges underlying detainers. *See id.* at 162. But "[e]ven apart from the effect of a detainer on a prisoner's treatment in the place of incarceration," the IAD evidences "a concern that the charges on which a detainer was based should be resolved 'before the passage of time has dulled the memory or made witnesses unavailable.'" *Aleman v. State*, 469 Md. at 405 (quoting S. Rep. No. 91-1356, at 2 (1970)).

Articles III and IV of the IAD explain the procedural requirements of the statute. Article III "'gives a prisoner incarcerated in one State the right to demand the speedy disposition of any untried indictment, information or complaint that is the basis of a detainer lodged against him by another State[.]'" *State v. Pair*, 416 Md. at 162 (quoting *Carchman v. Nash*, 473 U.S. at 718-19) (internal quotation marks and citation omitted); *see* Corr. Servs. § 8-405. Article IV "'enables a participating State to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges[.]'" *State v. Pair*, 416 Md. at 162 (quoting *Reed v. Farley*, 512 U.S. 339, 341 (1994)); *see* Corr. Servs. § 8-406. This case involves a prisoner's demand, under Article III, for the speedy disposition of the untried charges underlying a detainer.

8

Article III dictates the transfer process between the "[r]eceiving" state—"the state in which trial is to be had on an indictment, information, or complaint"[5]—and the "[s]ending" state—the "state in which a prisoner is incarcerated at the time that the prisoner initiates a request for final disposition." Corr. Servs. § 8-404(c). Under Article III(c), "[t]he interstate transfer process begins when the 'receiving' state lodges a detainer with the warden 'or other official' of the institution where the prisoner in question is currently imprisoned[.]" *State v. Pair*, 416 Md. at 162 (quoting Corr. Servs. § 8-405(b)); *accord Aleman v. State*, 469 Md. at 408. The "sending" state must inform the defendant of the detainer and of the right to request the final disposition of the charges under the IAD. *See*, *e.g.*, *Aleman v. State*, 469 Md. at 408; *State v. Pair*, 416 Md. at 162; *State v. Holley*, 82 Md. App. 381, 384-85 (1990); *see* Corr. Servs. § 8-405(c). Once informed of the detainer, the defendant may request a transfer to the receiving state by sending written notice to the prosecuting official in the receiving state. *See*, *e.g.*, *Aleman v. State*, 469 Md. at 408; *State v. Holley*, 82 Md. App. at 385; *see* Corr. Servs § 8-405(c). "This document operates as a request by the prisoner for final disposition of all untried charges underlying the detainer and is deemed to be a waiver of extradition[,]" establishing consent to being transferred to the receiving state to face the charges. *State v. Pair*, 416 Md. at 162-63; *see Aleman v. State*, 469 Md. at 408; Corr. Servs. § 8-405(e).

Under Article III(a), once the "prosecuting officer and the appropriate court" in the receiving state have received the request for final disposition of all untried charges

---

[5] Corr. Servs. § 8-404(b).

underlying the detainer, the receiving state must bring the defendant to trial within 180 days. Corr. Servs. § 8-405(a). Article V(c) states that the failure to bring the defendant to trial within 180 days requires the dismissal of the charges with prejudice. *See* Corr. Servs. § 8-407(c).[6]

In limited circumstances, however, the receiving state may obtain an extension of the 180-day time deadline. For example, the court may issue a continuance "for good cause," so long as the continuance is "necessary or reasonable" and "the prisoner or the prisoner's counsel [is] present." *See* Corr. Servs. § 8-405(a). In that circumstance, a trial date scheduled beyond the 180-day time limit would not require dismissal of the charges. *See*, *e.g.*, *Laster v. State*, 313 Md. 548, 559-60 (1988).[7]

Although the IAD imposes procedural obligations on both the defendant and the state, the state "'controls the only ultimate guarantee of performance for the benefit of the prisoner.'" *State v. Pair*, 416 Md. at 178 (quoting *Pittman v. State*, 301 A.2d 509, 513 (Del. 1973)). "'The burden of compliance with the procedural requirements of the IAD rests upon the party states and their agents; the prisoner, who is to benefit by this statute,

---

[6] Under Article IV, when the receiving state obtains custody of a prisoner in order to try the prisoner on criminal charges, the trial must "commence[] within 120 days of the arrival of the prisoner in the receiving state." Corr. Servs. § 8-406. Article V(c) states that the failure to bring the prisoner to trial within 120 days requires the dismissal of the charges with prejudice. *See* Corr. Servs. § 8-407(c).

[7] In addition, under Article VI, the running of deadlines is "tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." *See* Corr. Servs. § 8-408(a). In this instance, a trial scheduled beyond the time limit would not be subject to dismissal. *See*, *e.g.*, *United States v. Collins*, 90 F.3d 1420, 1427 (9th Cir. 1996).

is not to be held accountable for official administrative errors which deprive him of that benefit.'" *Id.* at 177 (quoting *Pittman v. State*, 301 A.2d at 514).

"As a congressionally-sanctioned compact, the IAD falls within Article I, § 10, cl. 3 of the United States Constitution and thus qualifies as a federal law." *Aleman v. State*, 469 Md. at 406; *accord State v. Coale*, 250 Md. App. at 7. "Because it is an interstate compact that has been approved by Congress, the IAD is subject to construction by federal courts." *State v. Coale*, 250 Md. App. at 7 (citing *Alabama v. Bozeman*, 533 U.S. 146, 149 (2001); *New York v. Hill*, 528 U.S. 110, 111 (2000)). "Maryland courts 'ordinarily defer to interpretations of the [IAD] provided by the United States Supreme Court.'" *Id.* (quoting *Pitts v. State*, 205 Md. App. at 487); *accord State v. Pair*, 416 at 168-69. Furthermore, Maryland appellate courts have recognized the value of interpreting the IAD consistently with the decisions of other party states. *Clipper v. State*, 295 Md. 303, 309 (1983); *Pitts v. State*, 205 Md. App. at 487.

Finally, Article IX of the IAD states that the act "shall be liberally construed so as to effectuate its purposes." Corr. Servs. § 8-411; *accord Aleman v. State*, 469 Md. at 407; *State v. Pair*, 416 Md. at 169; *State v. Coale*, 250 Md. App. at 10; *Pitts v. State*, 205 Md. App. at 487.

### B. Waiver of the Defendant's Rights under the Interstate Agreement on Detainers

Although the IAD does not mention the concept of waiver, courts have long held that a defendant may waive the rights that the statute confers. *See*, *e.g.*, *United States v. Odom*, 674 F.2d 228, 230 (4th Cir. 1982) (citing *United States v. Black*, 609 F.2d 1330,

11

1334 (9th Cir. 1979); *United States v. Eaddy*, 595 F.2d 341, 344 (6th Cir. 1979); *Camp v. United States*, 587 F.2d 397, 399-400 (8th Cir. 1978)).  The question of what constitutes a waiver has, however, led to a considerable amount of disagreement.

For purposes of the IAD, the most authoritative discussion of waiver appears in *New York v. Hill*, 528 U.S. 110 (2000).  In that case, the Court specifically considered "whether defense counsel's agreement to a trial date outside the time period required by Article III of the [IAD] bars the defendant from seeking dismissal because trial did not occur during that period."  *Id.* at 111.

In *Hill* the State of New York had lodged a detainer against a prisoner who was incarcerated in Ohio.  *Id.* at 112.  He invoked his rights under Article III of the IAD and was returned to New York.  *Id.*

At a scheduling conference in open court, the prosecutor proposed a trial date of May 1, 1995.  *Id.* at 112-13.  The trial court asked: "'How is that with defense counsel?'" *Id.* at 113 (quoting *People v. Hill*, 164 Misc. 2d 1032, 1035, 627 N.Y.S.2d 234, 236 (Cty. Ct., Monroe County 1995)).  Defense counsel responded: "'That will be fine, Your Honor.'"  *Id.* (quoting *People v. Hill*, 164 Misc. 2d at 1035, 627 N.Y.S.2d at 236).

Three months later, after the 180-day deadline had passed, the defendant moved to dismiss the charges.  *Id.*  The trial court denied the motion on the ground that "'[d]efense counsel's explicit agreement to the trial date set beyond the 180-day statutory period constituted a waiver or abandonment of defendant's rights under the IAD.'"  *Id.* (quoting *People v. Hill*, 164 Misc. 2d at 1036, 627 N.Y.S.2d at 237).

12

On appeal from the criminal conviction, the intermediate appellate court affirmed (*People v. Hill*, 244 A.D.2d 927, 668 N.Y.S.2d 126 (1997)), but New York's highest court, the Court of Appeals, reversed. *People v. Hill*, 92 N.Y.2d 406, 412, 681 N.Y.S.2d 775, 779, 704 N.E.2d 542, 546 (1998). In reaching that decision, the court acknowledged that a defendant may waive the speedy trial rights under the IAD. *Id.* at 411, 681 N.Y.S.2d at 778, 704 N.E.2d at 545. The court also acknowledged that, in general, a waiver "may be accomplished explicitly or by an affirmative request for treatment that is contrary to or inconsistent with those speedy trial rights[.]" *Id.* The court reasoned, however, that where "the defendant simply concurred in a trial date proposed by the court and accepted by the prosecution, and that date fell outside the 180-day statutory period, no waiver of his speedy trial rights was effected." *Id.* at 412, 682 N.Y.S.2d at 779, 704 N.E.2d at 546. The court added that the "[d]efendant's mere concurrence in the suggested date did not constitute an affirmative request for a trial date beyond the speedy trial period." *Id.*

On certiorari, the United States Supreme Court reversed. *New York v. Hill*, 528 U.S. at 118. In a unanimous opinion authored by Justice Scalia, the Court began by confirming that, like the other basic rights of criminal defendants, the right to be tried within 180 days under the IAD can be waived. *See id.* at 114. Nonetheless, the Court noted that courts "have disagreed on what is necessary to effect a waiver." *Id.* (citing *People v. Jones*, 197 Mich. App. 76, 80, 495 N.W.2d 159, 160 (1992); *Brown v. Wolff*, 706 F.2d 902, 907 (9th Cir. 1983); *Drescher v. Superior Court*, 218 Cal. App. 3d 1140, 1148, 267 Cal. Rptr. 661, 666 (1990)).

The Court went on to establish that a defense attorney may waive the defendant's right to be tried within 180 days under the IAD: "'[a]lthough there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial.'" *Id.* at 114-15 (quoting *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)).  In the Court's view, "[s]cheduling matters are plainly among those for which agreement by counsel generally controls." *Id.* at 115.  The Court explained:

> This case does not involve a purported prospective waiver of all protection of the IAD's time limits or of the IAD generally, but merely agreement to a specified delay in trial.  When that subject is under consideration, only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case.  Likewise, only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier.  Requiring express assent from the defendant himself for such routine and often repetitive scheduling determinations would consume time to no apparent purpose.  The text of the IAD, moreover, confirms what the reason of the matter suggests: In allowing the court to grant "good-cause continuances" when either "prisoner *or his counsel*" is present, it contemplates that scheduling questions may be left to counsel.

*Id.* (quoting IAD Article III(a)) (emphasis added in *New York v. Hill*).

The Court proceeded to reject the New York court's conclusion that "defense counsel's agreement to the trial date here was not an 'affirmative request'" for treatment contrary to or inconsistent with the IAD "and therefore did not constitute a waiver." *Id.* at 118 (quoting *People v. Hill*, 92 N.Y.2d at 412, 681 N.Y.S.2d at 779, 704 N.E.2d at 546).  The New York court's approach, the Court said, makes "dismissal of the indictment turn on a hypertechnical distinction"—a distinction between whether the

14

defendant requested a trial date that fell after the 180-day deadline or whether the

defendant merely agreed to it. *Id.* The Court explained:

> As illustrated by this case, such an approach would enable defendants to escape justice by willingly accepting treatment inconsistent with the IAD's time limits, and then recanting later on. Nothing in the IAD requires or even suggests a distinction between waiver proposed and waiver agreed to. In light of its potential for abuse—and given the harsh remedy of dismissal with prejudice—we decline to adopt it.

*Id.*

*Hill* establishes that a defendant can waive the speedy trial rights under the IAD

without expressly requesting a trial date that falls after the 180-day deadline if the

defendant (or defense counsel) expressly agrees to a trial date that falls after the 180-day

deadline. Many courts had reached that same conclusion before *Hill*,[8] and many have

---

[8] *See, e.g., Brown v. Wolff*, 706 F.2d at 907 (holding that, "by explicitly agreeing to a continuance of trial before the 180-day period had run and then agreeing to a further continuance up to the date of his trial . . . , Brown acted contrary to the speedy trial provisions of the IAD" and thereby waived his rights under the IAD); *United States v. Odom*, 674 F.2d 228, 228-30 (4th Cir. 1982) (holding that defendant waived his speedy trial right under the IAD because defense counsel requested a continuance that resulted in a trial date after the expiration of the deadline); *Moon v. State*, 258 Ga. 748, 751, 375 S.E.2d 442, 446-47 (1988) (finding no violation of the speedy trial provision of the IAD because "a trial date was set with the agreement of the defendant's attorney"); *People v. Jones*, 197 Mich. App. at 81, 495 N.W.2d at 161 (stating that "[d]efendant's trial attorney agreed to a trial date, which . . . was sufficient to bind defendant"); *State v. Garmon*, 972 S.W.2d 706, 711 (Tenn. Crim. App. 1998) (holding that defendant waived the right to be tried within 180 days under the IAD because "defense counsel from all appearances agreed to reschedule the trial and did not mention the violation of the [IAD] until after the time for compliance had passed").

have reached it since *Hill*.[9]

*Hill*, however, does not directly address the first issue in this case, which is whether a defendant waives the speedy trial right under the IAD by remaining silent and not objecting when the court sets a trial date that falls after the 180-day deadline. When the court schedules a trial to begin on a date after the 180-day deadline has passed, does a defendant "willingly accept[] treatment inconsistent with the IAD's time limits" by remaining silent and refraining from lodging an objection? *Hill* itself cited two cases that say that silence does not amount to a waiver.

First, in *Brown v. Wolff*, 706 F.2d at 907, the United States Court of Appeals for the Ninth Circuit wrote:

> A waiver is not ordinarily found from mere silence. The Agreement puts no affirmative obligation on the prisoner to alert the court of his IAD rights. We think it inappropriate to impose such an obligation.

Second, in *People v. Jones*, 197 Mich. App. 76, 81, 495 N.W.2d 159, 161 (1992), the court wrote that, "silence by a defendant and his counsel when a trial date is set does

---

[9] *See, e.g.*, *State v. Slaughter*, 152 A.3d 1275, 1290 (Del. Super. Ct. 2017) (holding that, by requesting a trial date outside the IAD window "not once, but twice," the defendant had "repeatedly accepted treatment inconsistent with the [IAD]'s timelines" and had thereby waived its protections); *State v. Golden*, 177 Ohio App.3d 771, 776, 896 N.E.2d 170, 174 (2008) (holding that because defense counsel agreed to trial date beyond the IAD deadline, defendant waived his rights under the IAD); *Commonwealth v. Jones*, 886 A.2d 689, 698 (Pa. Super. Ct. 2005) (holding that defendant waived his speedy trial rights under the IAD because his attorney expressly agreed to a date that fell outside the deadline); *State v. Onapolis*, 208 W. Va. 521, 525, 541 S.E.2d 611, 615 (2000) (holding that "a defendant waives his or her rights under the IAD when the defendant or defendant's counsel requests or agrees to a trial date outside the statutory time limits").

not amount to a waiver," but that "an affirmative request by defense counsel for a trial date beyond the statutory time period can be sufficient to waive the defendant's rights."

In *State v. Edwards*, 509 So.2d 1161, 1163 (Fla. Dist. Ct. App. 1987), the court quoted *Brown v. Wolff*, 706 F.2d at 907, for the proposition that "'*[a] waiver is not ordinarily found from mere silence*'" and that the IAD "'puts *no affirmative obligation* on the prisoner to alert the court of his IAD rights.'" (Emphasis added in *State v. Edwards*). "Other than standing silent and not objecting to the trial date, Edwards and his attorney did nothing which c[ould] be construed as a waiver of the IAD speedy trial provisions." *Id.* at 1162. Accordingly, the court held that Edwards had not waived his rights under the IAD. *See id.* at 1163. "A defendant," the court wrote, "has no duty to remind the state of its obligation to try him in a timely manner." *Id.*

Other courts have reached the same conclusion. *See, e.g.*, *Birdwell v. Skeen*, 983 F.2d 1332, 1340 (5th Cir. 1993) (holding that the defendant's "silence, when the court granted the State's motion for a continuance, did not constitute a waiver of his speedy trial rights under the [IAD]"); *People v. Allen*, 744 P.2d 73, 76-77 (Colo. 1987) (holding that "[t]he defendant did not have to demand that the prosecutor and the court comply with the IAD, as long as he did not affirmatively request that they follow a procedure inconsistent with it"), *superseded by statute as stated in People v. Newton*, 764 P.2d 1182, 1188 (Colo. 1988);[10] *State v. Dolbeare*, 140 N.H. 84, 86, 663 A.2d 85, 86 (1995)

---

[10] The Colorado legislature amended the state's speedy trial statute to provide that, for offenses committed on or after July 1, 1985, defendants waived their statutory rights if they failed to object to a trial date that violated the statute. *People v. Newton*, 764 P.2d at 1187. In *People v. Newton*, 764 P.2d at 1188, the Colorado court held that, for

(stating that "mere silence by the defendant and his attorney when the trial date is set does not amount to waiver"); *State v. Bjorkman*, 171 N.H. 531, 535 n.1, 199 A.3d 263, 266 n.1 (2018) (reiterating, after *New York v. Hill*, that mere silence when the trial date is set does not amount to waiver); *Commonwealth v. Mayle*, 780 A.2d 677, 682 (Pa. Super. Ct. 2001) (stating that "[i]t is not defendant's duty to insure that he is being brought to trial within the specified time; that responsibility rests with the Commonwealth"); *see also United States v. Eaddy*, 595 F.2d at 345 (holding that the defendant did not waive the protections of the "anti-shuffling" provisions of the IAD, which prohibit the receiving state from returning the prisoner to the sending date before the completion of the trial, by expressing no preference as to his place of incarceration pending trial: to hold otherwise "would shift the burden of compliance with the provisions of the Agreement away from the Government, where Congress placed it, and onto the prisoner").

In *United States v. Alexander*, 2005 WL 8167626 (D. Ariz. Sept. 15, 2005) (unreported), a federal magistrate judge considered whether *New York v. Hill* had invalidated the rule that the defendant's failure to object to an untimely trial resulted in a

---

offenses committed after the effective date of the amendment, the amended statute applied to the IAD as well. *Id.* at 1188. Before that change in state law, at least one other Colorado case had held that "mere silence, by itself, does not prove a waiver" of rights under the IAD. *People v. Sevigny*, 679 P.2d 1070, 1075 (Colo. 1984).

waiver of the speedy trial rights under the IAD.[11]  In a report and recommendation that

the federal district court later adopted,[12] the magistrate judge concluded that it did not.

In reaching her decision, the magistrate judge focused on the *Hill* Court's

statement that "the defendant had waived the speedy trial rights guaranteed by the IAD

'by willingly accepting treatment inconsistent with the IAD's time limits, and then

recanting later on.'"  *Id.* at *2 (quoting *New York v. Hill*, at 528 U.S. at 118).  The

magistrate judge reasoned that, in the case before her, the defendant had not willingly

accepted treatment inconsistent with the IAD's time limits, because there was no

indication that defense counsel was asked whether the proposed trial date was acceptable.

*Id.* at *3.  "Without any indication of affirmative assent," the magistrate judge decided

that *Hill* did not apply.  *Id.*

The magistrate judge relied on the Ninth Circuit's statements that "'[a] waiver is

not ordinarily found from mere silence,'" that the IAD "'puts no affirmative obligation on

the prisoner to alert the court of his IAD rights[,]'" and that it was "'inappropriate to

impose such an obligation.'"  *Id.* (quoting *Brown v. Wolff*, 706 F.2d at 907).  And even

though *Brown v. Wolff* predated *Hill*, the magistrate reasoned that "the rule adopted in

*Brown* is not inconsistent with the holding in *Hill*."  *Id.*  She explained:

---

[11] "It is the policy of this Court to allow the citation of unreported opinions from federal courts and courts of other states as long as the jurisdiction where it was issued would allow its citation for persuasive value in its courts."  *Critzos v. Marquis*, 256 Md. App. 684, 695 n.4 (2023).  "[T]his Court may consider unpublished federal opinions for their persuasive value."  *Id*.

[12] *United States v. Alexander*, 2005 WL 8167625 (D. Ariz. Oct. 31, 2005).

> Were there evidence here of anything more than silent acceptance of the assigned trial date, the outcome might be different. However, as the court found in *Brown* and as defense counsel argued at the hearing, to impose a rule requiring the defense to warn the Government of potential violations of speedy trial rights would impose an obligation not found in the IAD and would effectively shift from the Government to defendants the burden of insuring speedy trial rights.

*Id.*

By contrast, a number of courts have held that a defendant does waive the speedy trial rights under the IAD by remaining silent and refraining from objecting when the court schedules the trial to begin after the statutory deadline. *See*, *e.g.*, *Saffold v. State*, 521 So.2d 1368, 1372 (Ala. Crim. App. 1987) (holding that defendant waived the speedy trial protections of the IAD because defense counsel did not object when the trial court scheduled the trial to begin after the deadline had run); *People v. Newton*, 764 P.2d 1182, 1188 (Colo. 1988) (applying a state statute under which silence results in a waiver of the right to a speedy trial to hold that the defendant waived the speedy trial protections of the IAD by failing to object to a trial date after the IAD deadline had run); *State v. Schmidt*, 84 Haw. 191, 199, 932 P.2d 328, 336 (Ct. App. 1997) (holding that the defendant waived his objection to a violation of his speedy trial rights under the IAD because he did not object until after the IAD deadline had run); *Pethtel v. State*, 427 N.E.2d 891, 894-95 (Ind. Ct. App. 1981) (relying on decisions concerning a state rule implementing a state right to an "early trial" to hold that defendant waived the speedy trial protection of the IAD because he failed to object when the court set a date outside of the 180-day deadline); *Ward v. Commonwealth*, 62 S.W.3d 399, 404 (Ky. Ct. App. 2001) (treating the failure to object to a trial date beyond the IAD deadline as tantamount to an agreement to

20

the trial date and holding that defendant had thereby waived the IAD violation); *State v. Overton*, 261 S.W.3d 654, 662 (Mo. Ct. App. 2008) (holding that defendant waived his right under the IAD to be tried within 180 days because he "failed to object and therefore acquiesced to a trial date beyond the limitation period"); *see also Drescher v. Superior Court*, 218 Cal. App. 3d at 1148, 267 Cal. Rptr. at 666 (holding that, "[b]y freely acquiescing in the numerous continuances of the preliminary hearing, as well as the setting of a trial date well beyond the speedy trial period" in the IAD, "petitioner waived his statutory right").[13]

In the cases that hold that a defendant waives the speedy trial protections of the IAD by failing to object to a trial date, the courts typically do not acknowledge, much less discuss, the prosecution's statutory obligation to bring the defendant to trial within the statutory deadline. Nor do the cases discuss the wisdom or propriety of shifting that statutory obligation onto the defendant or requiring the defendant to bear an obligation not found in the IAD. Moreover, several of these cases turn on the application of state laws that equate the failure to object with a waiver. The application of those unique state laws suggests that, ordinarily, the failure to object would not amount to a waiver.

In *Ward v. Commonwealth*, 62 S.W.3d at 404, Kentucky's intermediate appellate court decided that *New York v. Hill* had invalidated an earlier decision in which the Kentucky Supreme Court held that, "[a]s long as [the prisoner] did not affirmatively

---

[13] *Drescher v. Superior Court* is one of the three cases that the United States Supreme Court cited in *New York v. Hill*. From the factual exposition in *Drescher*, it is unclear whether the defendant "freely acquiesce[ed]" in the setting of the trial date by expressly requesting or agreeing to the date, or by failing to object to it.

21

request the court to follow a procedure inconsistent with the IAD, it was not necessary that he demand the court comply with the IAD, since . . . the burden of complying with the IAD is on the Commonwealth." *Roberson v. Commonwealth*, 913 S.W.2d 310, 315 (Ky. 1994). In reaching its decision, the Kentucky court correctly recognized that in *New York v. Hill* "the United States Supreme Court *held* that a defendant implicitly waives the IAD's time limits where he or his counsel agrees to a trial date outside those limits." *Ward v. Commonwealth*, 62 S.W.3d at 404 (emphasis added). The court, however, failed to recognize that *Hill* addresses the situation in which the defendant (or the defendant's lawyer) expressly requests or expressly agrees to a trial date that falls after the statutory deadline. *New York v. Hill*, 528 U.S. at 118. *Hill* does not discuss whether a defendant waives the speedy trial protections of the IAD by remaining silent and neither agreeing nor objecting when the court sets a trial date that falls after the statutory deadline.

In our judgment, the better reasoned cases hold that the failure to object does not amount to a waiver of the IAD's protections. "[T]he Legislature has placed one, and only one burden on the prisoner, that is, to ask the prison official who has custody over him to prepare and send the forms to the jurisdiction from which a detainer is lodged against him.'" *State v. Coale*, 250 Md. App. at 28-29 (quoting *State v. Pair*, 416 Md. at 178). "All other duties and responsibilities imposed by the statute fall upon the relevant government actors of the member States." *Pitts v. State*, 205 Md. App. at 492 (citing Corr. Servs. §§ 8-401 to 8-417). Thus, the burden of bringing a defendant to trial within

180 days lies solely with the State. A defense lawyer has no obligation to remind the State of its duty to bring the defendant to trial within the statutory deadline.[14]

In this regard, it is worth asking what would have happened if Meadows's lawyer had objected to the State's failure to procure a trial date that complied with the IAD's deadlines. In that event, the State would probably have requested (and would probably have obtained) an extension for good cause. Thus, an objection would have alerted the State to a fatal defect in its case and allowed the State to cure that defect. In these circumstances, if we required a defendant to object (upon pain of waiver) whenever the State had failed to notice that a trial would not begin until after the IAD deadline had run, we would relieve the State of its statutory burden to bring the defendant to trial within the IAD's deadlines and would shift the burden to the defendant. And we would require the defendant to shoulder that burden even though the statute, which is supposed to "be liberally construed in favor of the prisoner against whom the detainer is lodged[,]"[15] places the burden on the State alone.

The State argues that we will reward what it calls "gamesmanship" if we hold that the failure to object does not amount to a waiver. We disagree. "Gamesmanship" means "the art or practice of winning games by questionable expedients without actually violating the rules" or "the use of ethically dubious methods to gain an objective." *Gamesmanship*, Merriam-Webster.com Dictionary (2024) (retrieved from

---

[14] In fact, one could argue that a defense lawyer has a professional obligation *not* to remind the State of that duty.

[15] *State v. Pair*, 416 Md. at 177; *see* Corr. Servs. § 8-411.

23

https://www.merriam-webster.com/dictionary/gamesmanship) (archived at https://perma.cc/B2AL-CC52). It is not "gamesmanship" to refrain from alerting an adversary to a fatal defect in the presentation of its case; it is sound advocacy.

Invoking the language of *New York v. Hill*, 582 U.S. at 118, the State also argues that the circuit court's decision relies on a "hypertechnical distinction" between expressly consenting to a particular trial date and refraining from objecting when a trial date is set. In the context of the IAD, we disagree with the characterization of the distinction as "hypertechnical." There is a material difference between expressly consenting to a trial date and saying nothing at all about whether one does or does not consent to a trial date. A rule requiring a defendant to object would relieve the State of its statutory obligation to secure a trial date that complies with the IAD.

Finally, the State invokes the language of *New York v. Hill*, 582 U.S. at 118, to argue that, by not objecting to a trial date that fell beyond the 180-day deadline, Meadows "willingly accept[ed] treatment inconsistent with the IAD's time limits, and then recant[ed] later on." We disagree that Meadows "willingly accepted" anything when he remained silent. By remaining silent, Meadows preserved his right to treatment that is consistent with the IAD's time limits.

In summary, the circuit court correctly concluded that Meadows did not waive the speedy trial protections of the IAD by not objecting to a trial date that fell after the 180-day deadline had run. Therefore, the circuit court did not err in dismissing the indictment against Meadows with prejudice because of the State's failure to bring him to trial within 180 days.

24

**C. Transfer from District Court to Circuit Court does not restart the 180-day period required by the IAD.**

In an auxiliary argument, the State contends that it complied with the IAD because it dismissed the district court charges and had the district court recall the arrest warrant before the 180-day deadline had run. The State acknowledges that it dismissed the charges and had the warrant recalled only after it had indicted Meadows in the circuit court, on multiple charges arising from the same incident. The State insists, however, that the circuit court case was not simply "a continuation of the first action." The State observes that there were two cases, with two charging documents and two case numbers.

In support of its contention that it complied with the IAD by dismissing the district court case before the deadline ran, the State relies prominently on *State v. Jefferson*, 319 Md. 674 (1990). In that case, the defendant had been brought from Virginia to Maryland under the authority of the IAD; he was tried and convicted in the district court; he took a de novo appeal to the circuit court; but before the de novo trial began, he was returned to Virginia. *Id.* at 676. He contended that, by returning him to Virginia before the de novo trial in circuit court, the State had violated the "anti-shuffling" provision of the IAD, which requires a court to dismiss the charges without prejudice "[i]f trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment." Corr. Servs. § 8-406(e). The circuit court dismissed the charges. *State v. Jefferson*, 319 Md. at 677-78.

On certiorari, the State argued that it had not returned the defendant to "the original place of imprisonment" before a trial was "had,"[16] because, it said, the de novo appeal acted as a second proceeding and not as a continuation of the district court trial. *Id.* at 681. The Court agreed.

The district court judgment, the Court reasoned, was "a final adjudication in that court." *Id.* "[T]he de novo nature of the appeal [did] not change its basic character as an appeal from a final judgment," in which the circuit court exercises "appellate, rather than original[,] jurisdiction." *Id.* The district court trial, wrote the Court, was "complete unto itself" and did not act merely "as a preliminary proceeding to a possible de novo appeal." *Id.* at 682. "Nor [did] the de novo appeal 'wipe the slate clean.'" *Id.* (quoting *Stanton v. State*, 290 Md. 245, 249 (1981)). Thus, the Court held that the State does not violate the anti-shuffling provision of the IAD when "the prisoner has been convicted by the District Court of the criminal charges underlying the detainer, files an appeal, and is returned to the sending state to await the scheduling of the de novo appeal." *Id.* at 683.

This case is a bit different from *Jefferson*. Here, no trial was ever "had" in the district court. And a circuit court indictment bears no resemblance to a de novo appeal from a conviction after a trial in the district court. *Jefferson*, therefore, does not compel the conclusion that the circuit court case against Meadows was a second proceeding and not simply a continuation of the proceedings in the district court.

---

[16] Corr. Servs. § 8-406(e).

No case directly answers the specific question of whether the State can satisfy its obligation under the IAD by dismissing a district court case before the 180-day deadline has run immediately after the State indicts the defendant in circuit court on charges arising from the same transaction. Several cases, however, provide clues to the answer: *Brooks v. State*, 329 Md. 98 (1993); *State v. Smith*, 316 Md. 223 (1989); and *Pitts v. State*, 205 Md. App. 477 (2012).

*Brooks v. State* concerns the Intrastate Detainers Act (the "IDA"), Corr. Servs. §§ 8-501 to -503. The IDA, like the IAD, addresses the problem of "untried indictments, informations, warrants, or complaints[.]" Corr. Servs. § 8-501. The IDA, however, provides a remedy not for those who are incarcerated outside of the State of Maryland, but for those who are serving sentences in a correctional facility in the Division of Correction, who are confined at the Patuxent Institution, or who are serving a sentence in the local correctional facility. Corr. Servs. § 8-502(a).

Much like the IAD, the IDA contains a speedy trial provision that requires the State to bring these prisoners to trial within 120 days after they deliver a request for the final disposition of the charges to the State's Attorney of the county where the charges are pending and "the appropriate court." Corr. Servs. § 8-502(b). If the State does not bring "the untried indictment, information, warrant, or complaint" to trial within 120 days, it has "no further force or effect," and the court, on motion, must dismiss it without prejudice. Corr. Servs. § 8-503(e).

The General Assembly enacted the IDA on the same day that it enacted the IAD. *State v. Coale*, 250 Md. App. at 11. "Because the IAD and the [IDA] are 'component

parts of the same general system, they should be construed together to the extent possible.'" *Id.* (quoting *State v. Barnes*, 273 Md. 195, 207 (1974)). This Court has used decisions interpreting the IDA to assist in resolving contentions regarding the IAD. *Id.*

In *Brooks v. State*, 329 Md. at 101, the Court considered which court was the "appropriate court" under the IDA—the court to which the prisoner must deliver the request for final disposition—when the State initiated the prosecution in the district court, but later indicted the defendant in the circuit court. In that case the State had charged the defendant with common-law robbery in the District Court of Maryland for Anne Arundel County on May 30, 1990. *Id.*

When the State brought the robbery charge in the district court, the defendant was in the custody of the Division of Correction. *Id.* The State lodged a detainer against him, and he requested the final disposition of the charges under the IDA. *Id.* The defendant delivered the request to the district court in Annapolis on June 29, 1990, and to the State's Attorney for Anne Arundel County on July 2, 1990. *Id.*

On September 17, 1990, the State filed a criminal information against the defendant in the Circuit Court for Anne Arundel County. *Id.* at 102. The information charged the defendant with offenses that arose from the same incident as the one involved in the district court charging document. *Id.* On September 26, 1990, the district court transferred the record, including the request for a speedy trial under the IDA, to the circuit court. *Id.*

The State did not bring the defendant to trial before the 120-day deadline had run. *Id.* Consequently, the defendant moved to dismiss the charges. *Id.* The circuit court

28

denied the motion on the ground that the defendant had not filed the request in the "appropriate court" when he filed it in the district court. *Id*. As the basis for its conclusion, the circuit court reasoned that the district court did not have jurisdiction to try the case against the defendant. *Id*.

On certiorari, the Court held that the defendant had filed his request in the "appropriate court" when he filed it in the district court. *Id*. at 103. The Court also held that the defendant had no obligation to send a new request for a speedy trial under the circumstances of that case. *Id.* at 106.

In rejecting the State's argument that the filing of the criminal information "nullified" the defendant's compliance with the statute "and required him to file a new request with the circuit court," the Court wrote: "This argument contravenes the rule that, once the defendant has complied with the notice provisions of the IDA, the burden shifts to the State to bring the defendant to trial within the prescribed time period." *Id.* The Court added that: "It is not consistent with the IDA or the Maryland Rules to require a defendant, who has complied with the notice provisions, to send a new notice under the circumstances here." *Id.*

The Court explained that Maryland Rule 4-221(h) "contemplates that the District Court and the circuit court files will be merged and that any detainee's notice, filed in the District Court while it was the appropriate court, will be transmitted to the circuit court." *Id.* at 106-07. "Meanwhile," the Court wrote, "the State's Attorney has a duplicate of the request for disposition of the charges under the IDA and is thereby alerted that the 120 day period is running." *Id.* at 107.

29

In other words, when the State initially charged the defendant in the district court, but later re-charged him in the circuit court, the *Brooks* Court treated the district court and circuit court cases as a single, continuous proceeding. *See id*. at 108. *Brooks*, therefore, strongly implies that, unlike the de novo appeal in *Jefferson*, the circuit court charges did not give rise to an entirely new proceeding. Accordingly, *Brooks* implies that the State could not avoid its obligation to bring Meadows to trial within 180 days through the simple expedient of charging him in the circuit court and dismissing the related charges that were pending in the district court. Furthermore, *Brooks* expressly rejects the State's tacit contention that Meadows was required to file a new request for the final disposition of the charges against him after the State indicted him in the circuit court and dismissed the district court case. *Id*. at 106.[17]

In *Smith v. State*, 316 Md. 223 (1989), a case involving the IAD, the Court rejected the State's contention that the IAD clock stops when the State replaces the district court charges with a circuit court indictment. In that case a district court commissioner issued a statement of charges and an arrest warrant for the defendant, who was incarcerated in the District of Columbia. *Id.* at 224-25. The State's Attorney for Prince George's County lodged that document as a detainer, and the defendant invoked his right to a speedy trial under the IAD. *Id.* at 225. More than 200 days after the defendant invoked the right to a speedy trial, the State indicted him in the circuit court (*id.*) on charges involving the same incident as the one in the district court case. *See id.*

---

[17] The State seems to assert that it lodged a new detainer after the circuit court indictment. We are unable to find support for that assertion in the record.

at 225 n.2; *id.* at 231 n.9. On the defendant's motion, the circuit court dismissed the charges on the ground that the State had not brought him to trial within 180 days. *Id.* at 226.

On certiorari, the Court held that the arrest warrant on a charging document was an "untried complaint" under the IAD, which the defendant could compel the State to bring to trial within 180 days. *See id*. at 224; *id*. at 228; *id*. at 229. In reaching that conclusion, the Court recognized that the district court did not have jurisdiction over several of the felonies with which the defendant was charged. *Id.* at 231 n.9. Nonetheless, the Court rejected the State's contention that "because it could not have prosecuted all of [the defendant's] alleged offenses on the basis of the statement of charges, that statement, in conjunction with [his] request for disposition, could not have activated his rights under Article III of the IAD." *Id.* at 231. "[T]he statement of charges," the Court wrote, "squarely placed the prisoner on the path toward trial[.]" *Id.* at 231-32. Because the State did not bring the defendant to trial within 180 days of the receipt of the request for final disposition of the district court charges, the Court affirmed the dismissal of the criminal case. *Id.* at 233.

*Smith* establishes that the IAD clock begins to run once a statement of charges has been issued and continues to run even after the State has indicted the defendant in the circuit court. Thus, *Smith* establishes that, in a case in which the State charges a defendant in the district court and later indicts the defendant in the circuit court, we treat the case as a single, continuous action for purposes of the speedy trial deadlines in the IAD. And, in determining whether the State has met those deadlines, we count the

amount of time that passes between the request for final disposition of the district court charges and the indictment, as well as the time that passes after the indictment.

Finally, in *Pitts v. State*, 205 Md. App. 477 (2012), this Court held that the State could not stop the IAD clock by a measure short of bringing the defendant to trial. There, the State initiated charges against a defendant who was incarcerated in Virginia and lodged a detainer against him; he invoked his right under the IAD to request the final disposition of the charges; the State withdrew the detainer instead of bringing him to trial within 180 days, as the IAD required; and when the defendant was released from prison in Virginia and returned to Maryland, he was arrested on the outstanding charges. *Id.* at 480-81. The circuit court denied his motion to dismiss. *Id.* at 482.

On appeal from the criminal conviction, the defendant argued that "the State's withdrawal of the detainer was not a final disposition of the charges against him as required by Corr. Servs. § 8-405(a)[.]" *Id.* at 486. This Court agreed.

Relying on the plain language of the IAD, we explained that, "once a detainer 'has been' lodged against a prisoner, and the prisoner has properly requested final disposition of the underlying charges, the subsequent withdrawal of that detainer is of no effect because it does not change the fact that a valid detainer was lodged against the prisoner at some point previously." *Id.* at 493 (quoting Corr. Servs. § 8-405(a)). We further explained that the defendant's "compliant notice pursuant to the IAD . . . specifically requested the final resolution of the charges underlying the detainer, not just that the detainer lodged against him be withdrawn." *Id.* "Therefore," we concluded, "the State could not avoid its obligations under the IAD simply by withdrawing the detainer,

32

because withdrawing the detainer did not provide a final resolution of charges pending against [the defendant] as required by the IAD." *Id.*

In summary, *Brooks* instructs us that, ordinarily, we should view the district court case and the circuit court case as a single, continuous proceeding when the State indicts a defendant in circuit court after the defendant has requested the final disposition of the district court charges. *Smith* instructs us that the State cannot reset the IAD clock by dismissing the district court charges that prompted the request for final disposition and replacing them with a circuit court indictment. *Pitts* instructs us that the State can comply with the IAD only by bringing the defendant to trial before the 180-day deadline has run.

In view of these authorities, we hold that the State did not satisfy the 180-day deadline in the IAD by dismissing the district court statement of charges after obtaining a circuit court indictment on charges arising from the same transaction. Instead, the 180 days continued to run after the dismissal of the district court charges. Because the State did not bring Meadows to trial before the 180-day deadline had run, the circuit court did not err in dismissing the charges against him.

<h2 style="text-align:center">CONCLUSION</h2>

The trial court did not err in dismissing Meadows's case with prejudice, because the State failed to bring Meadows to trial within 180 days of the date when both the district court and the State's Attorney received his request for a final disposition of the charges against him. Meadows did not waive his right to be brought to trial within 180 days by remaining silent and lodging no objection to the trial date, and the State did not

33

discharge its obligation to bring Meadows to trial within 180 days by dismissing the

charges in the district court and indicting him in the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**